IN RE ESTATE OF ULYSSES BUCKLIN.
FRANK G. BUCKLIN, trustee, applicant-appellee, v. NINA
BUCKLIN WHARTON, resistor and objector-appellant.

No. 47978.

(Reported in 51 N.W.2d 412)

FEBRUARY 5, 1952.

Cross & Hamill and Herbert S. Selby, all of Newton, for appellant.

Campbell & Campbell, of Newton, for appellee.

SMITH, J.—The will of Ulysses Bucklin, admitted to probate April 10, 1950, created a trust "for the use" of. his son, "the income arising therefrom to be paid to said Ralph R. Bucklin quarterly or yearly as may seem best to said trustees." It further provided for payment to him, at the trustees' discretion, of "any part of the corpus" and then added:

"No person other than said Ralph R. Bucklin or his legal representative shall have a right to acquire any interest in or to compel payment of any of the funds of said trust, and no creditor, or assignee, or transferee of said Ralph R. Bucklin shall have a right to compel payment * * * or to acquire any interest therein by attachment, garnishment, execution or otherwise."

Then follows provision that: in event of attempted assignment or transfer by Ralph; or any attempt by any person other than Ralph or his legal representative to acquire any interest or secure payment; or in event of Ralph's bankruptcy or insolvency the trustees shall have discretion to exclude Ralph "from all interest in said trust funds" and to hold same for Ralph's "depend-

ents, wife, lineal descendants or relatives as said trustees shall deem proper," but with the right to reinstate him later. It is provided further that upon Ralph's death the trustees "shall have the right to pay" the funds "to his legal representative, or to such of the lineal descendants" as the trustees may select.

Beneficiary's former wife, Nina Bucklin Wharton, claims to be a creditor on account of unpaid installments of child support money under a divorce decree, dated September 14, 1932.

Upon application of the surviving trustee and over Nina's objections the trial court held it was the intention of testator to give the trustee full power, in his discretion, "to pay over or withhold the corpus or principal and also the income of the trust property without the authority or consent of" the beneficiary or his former wife or "of any other person or of the court, all in accordance with the purposes and objects of said trust as set forth in said will"; and that "neither said beneficiary nor any other person has any right in or to said funds, property or income or can acquire any right therein unless and until the same shall have been paid over to a beneficiary of said trust in the discretion of said trustee."

Nina Bucklin Wharton, objector herein, has appealed from said decision, urging the court erred: (1) In construing the trust to be discretionary with the trustee "as to the gift of income"; and (2) in holding valid the restraints "excluding the gift * * * from legal process."

Otherwise stated, appellant contends the trust is a true spendthrift, and not a discretionary, trust; that the court erroneously construed it to be the latter; that the restrictive provisions on alienation are illegal; and that as a true spendthrift trust we should declare it invalid. The controversy involves only the status of the *income*. The beneficiary, though served with notice, did not appear in the hearing below and has not appealed.

I. Appellant argues the court's interpretation of the trust as discretionary ignores the plain language which says the income is to be paid to the beneficiary either quarterly or yearly as may seem best to the trustee; and that this language, contrasted with the next sentence which expressly makes any payment from the corpus purely discretionary with the trustee, clearly means distribution of income is *not* discretionary; also that the court's

order ignores the further sentence which says "no person other than" the beneficiary "shall have a right * * * to compel payment * * *", and this further confirms that the beneficiary can compel payment while it attempts to make that absolute right inalienable.

We agree with the contention thus far. The discretionary provision relates only to payments out of corpus. No discretion is lodged in the trustee as to payment of income except in case a forfeiture be declared for some attempted assignment or other cause provided in the latter part of the trust provision. And we also agree that under modern terminology this is a *true* spendthrift, as distinguished from a discretionary, trust.

II. Many words have been written by courts, lawyers and text writers about spendthrift trusts and their validity or invalidity. Doubtless the term has at times been loosely applied to discretionary trusts designed to prevent alienation, by withholding vesting of the equitable right of the beneficiary to compel distribution.

Appellant argues the invalidity of the trust here and contends the status of the true spendthrift trust in Iowa as to validity has never been determined and presents the case as one of "first impression."

But in In re Estate of Tone, 240 Iowa 1315, 1325, 39 N.W.2d 401, 407, after clearly pointing out the distinction between discretionary and so-called "true" spendthrift trusts, the language of the wills in question was held to create spendthrift trusts *"unquestionably valid at least as to the income payable to the life beneficiary."* (Italics supplied.)

Appellant, citing this case to establish the distinction between the two kinds of trusts, ignores the explicit language above-quoted, merely saying "the Tone case dealt solely with the question of an alleged abuse of discretion on the part of the trustee under the purely discretionary provisions binding the principal in that case."

Appellee, on the other hand, cites the Tone case, not on the question of the validity of spendthrift trusts as to income, but to support his contention that the trust here is in fact discretionary, as the trial court held.

In this state of the record, without conceding the question is an open one in this jurisdiction, we deem it proper to review the considerations which we think demonstrate the validity of what has come to be called the true spendthrift trust.

The Restatement of the Law of Trusts, section 152, page 368, defines a *"valid"* spendthrift trust (as to income) as one by the terms of which "the beneficiary is entitled to the income" and in which it is provided "that his interest shall not be transferable by him and shall not be subject to the claim of his creditors." See 54 Am. Jur., Trusts, section 152, where it is said the validity of spendthrift trusts "is upheld in this country by the great weight of authority." See also 65 C. J., Trusts, section 27, page 238; section 308, page 555; and page 230.

The annotation on Validity of Spendthrift Trusts, 119 A. L. R. 19, lists thirty-two jurisdictions (including Hawaii) in which the courts have held restraints on alienation of income valid. Among the minority of ten (including England) listed the other way, are five also contained in the majority list. This was in 1939. What a similar survey would show now we cannot attempt to learn. It is manifest the confusion in nomenclature between discretionary and spendthrift trusts would make any mathematically correct count of noses or citation of cases as burdensome as it would be inconclusive. It does seem to be reasonably certain however that the decided weight of authority favors the validity of the true spendthrift trust. See further annotation 138 A. L. R. 1319, 1320–1322.

III. We are more concerned with the weight of the various arguments than with the numerical weight of authority. Much of the argument against validity is based on the common-law doctrine that ownership implies complete power to alienate, with consequent right of creditors to reach by legal process, the property interest of the beneficiary.

The opinion in Brahmey v. Rollins, 1935, 87 N. H. 290, 179 A. 186, 119 A. L. R. 8 (much relied on here by appellant), is perhaps the leading case against the validity of the spendthrift trust. It accepts what is sometimes called the English rule. The much earlier case (1882) of Broadway National Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504, is an outstanding authority *for* validity.

 Those who would deny validity adopt the common-law doctrine that ownership must include power to alienate and consequent subjection to legal process in favor of creditors. But as tersely said in 54 Am. Jur., Trusts, section 153, page 128: "Although the power to alienate is requisite to a legal estate, it is not an essential quality of an equitable estate, and therefore cannot be advanced as a valid objection to a spendthrift trust."

In Broadway National Bank v. Adams, supra, at page 172 of 133 Mass., the court quotes Lord Coke's pronouncement upon which rests the common-law doctrine that precludes any limitation upon alienability being attached to a fee simple title, and adds: "But the reasons of the rule do not apply in the case of a transfer of property in trust. By the creation of a trust like the one before us the trust property passes to the trustee with all its incidents and attributes unimpaired. He takes the whole legal title to the property, with the power of alienation; the cestui que trust takes the whole legal title to the accrued income at the moment it is paid over to him."

The erudite judge who wrote the opinion in Brahmey v. Rollins, supra, suggests the analysis in the Adams case (supra) is unsound as "it confuses income with the right to it, and places absolute rights on the same basis as dependent ones, by the rather glaring error of holding that the beneficiary has no absolute rights except to income he has received." Continuing, the opinion says: "It is true that the income of a trust fund, as well as the principal, belongs in title to the trustee. The beneficiary's right is to demand and receive it from the trustee as it becomes payable. But this right is absolute. It is directly and definitely enforceable. It has been given the beneficiary and is his property as fully and completely and in all respects as much as anything he owns in fee simple." (At page 295 of 87 N. H., page 191 of 179 A.)

██ ██ The argument seems to beg the whole question. It *assumes* the equitable right "to demand and receive" may not be limited by restraints upon its alienability. That is the very point at issue. We cannot concede it. The assumption seems to us unsound. The opinion says the beneficiary's right (to demand and receive) is "directly and definitely enforceable." But enforceable how? No one would argue he could maintain an action at law

against his trustee. Darling v. Dodge, 200 Iowa 1303, 1305, 206 N.W. 266. He can only enforce his right by resort to equity, and surely equity can control its own processes and can deny relief where equitable rights have been aliened, contrary to the very terms of their creation. "Alienability is not an essential attribute of an equitable life estate in property." Seymour v. McAvoy, 121 Cal. 438, 443, 53 P. 946, 947, 41 L. R. A. 544. See also Haskell v. Haskell, 234 Mass. 442, 125 N.E. 601; Smith v. Towers, 69 Md. 77, 14 A. 497, 15 A. 92, 9 Am. St. Rep. 398; annotation 119 A. L. R. 19 (at page 24 et seq.) ; 65 C. J., Trusts, pages 232, 233.

In Smith v. Towers, supra, the dissenting opinion (15 A. 92, 94) concedes that even under the English rule substantially the same result may be attained by providing a cesser or termination of the estate in the event of attempted alienation by the beneficiary or seizure by his creditors.

Equity originated in a desire to get away from some of the rigors and technicalities of the common law. It is more flexible and adjustable in its procedure. It presents no technical difficulties in the way of the management and control of spendthrift trusts. An important purpose of the whole doctrine of trusts is to accomplish something unknown to the common law. Why should its usefulness be impaired by attaching to it some of the very unwieldiness that equity was designed to avoid?

The decision in Broadway National Bank v. Adams, supra, at page 174 of 133 Mass., proclaims the right of the founder of a trust to provide *directly* "that his property shall go to his beneficiary with the restriction that it shall not be alienable by anticipation * * * instead of indirectly reaching the same result * * * by giving his trustees a discretion as to paying it" and adds:

"Under our system, creditors may reach all the property of the debtor not exempted by law, but they cannot enlarge the gift of the founder of a trust, and take more than he has given.

"The rule of public policy which subjects a debtor's property to the payment of his debts does not subject the property of a donor to the debts of his beneficiary, and does not give the creditor a right to complain that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach."

The New Hampshire case (Brahmey v. Rollins, supra) says this reasoning "confuses income with the right to it, and places absolute rights on the same basis as dependent ones, by the * * * error of holding that the beneficiary has no absolute rights except to income he has received."

We think the error is that of the proponents of invalidity (whether courts or text writers) in confusing the equitable right to demand and receive income with the similar legal right an individual might have to collect by an action at law what may be due him at law. It is that *equitable* right that is made inalienable. The income itself after being paid over to the beneficiary (or more technically, perhaps, the right to retain and spend it after distribution) of course becomes subject to alienation, voluntary or involuntary, the same as any other property to which he holds legal title. But we see no reason for holding an equitable right may not be created that is not subject to either voluntary or involuntary alienation, so long as it is not reduced to legal ownership.

Many cases pro and con might be cited and discussed but we have seen fit to confine our attention principally to the two leading cases on the respective sides of the controversy as they seem to have quite fully stated the respective arguments.

IV. We have not thus far referred to the question of public policy, which some decisions and law writers seem to consider the controlling consideration. The proposition is not one that permits of much logic in discussion. Ordinarily it would seem the legislature should be the arbiter of public policy unless the subject be one upon which there is more unanimity of opinion than we find exists here.

We are not disposed to consider the spendthrift trust any threat to public morality or welfare. Again quoting the Massachusetts opinion (page 173):

"The only ground upon which it can be held to be against public policy is, that it defrauds the creditors of the beneficiary. * * *

"The answer is, that creditors have no right to rely upon property thus held, and to give him [the beneficiary] credit upon the basis of an estate which, by the instrument creating it, is

declared to be inalienable by him, and not liable for his debts. By the exercise of proper diligence they can ascertain the nature and extent of his estate * * *."

See Nichols v. Eaton, 91 U. S. 716, 726, 23 L. Ed. 254.

We find no consideration of public policy which would justify holding the trust invalid. On the contrary "the law recognizes a public policy allowing a donor to condition his bounty as suits himself as long as he violates no law in so doing." 54 Am. Jur., Trusts, section 153, note 7.

V. As already suggested, some of our cases apply the term spendthrift trust to those now classified as discretionary. This merely means the nomenclature had not become standardized to its present state. See Jones v. Coon, 229 Iowa 756, 762, 295 N.W. 162. The opinion in Standard Chemical Co. v. Weed, 226 Iowa 882, 884, 285 N.W. 175, illustrates the transition we have undergone in the use of terms.

As a consequence citation of our own decisions by both parties must be carefully analyzed. We find none that conflicts with the pronouncement in the Tone case, supra, already referred to and our conclusion here.

VI. In her written brief appellant specifies only the two errors we mentioned near the beginning of this opinion. No error was predicated upon the proposition that she had any special right, different from that of any other judgment creditor, because her judgment was for the support of the children; nor is any such issue pleaded.

In written argument, however, she refers to the "particular case here presented" as "an extreme example of the injustice which is seen to result from the recognition and enforcement of the true spendthrift trust." Then follows a reference to some "exceptions as to particular classes of claimants against whom the spendthrift trust will not be operative," citing section 157 of the Restatement of the Law of Trusts.

The argument quotes at length from I Bogert's Trust and Trustees, section 223, page 727, in which the author says: "Great efforts have been made to get courts and legislatures to make exceptions to their doctrine about spendthrift trusts, in favor of certain creditors with peculiarly powerful claims on the sym-

pathy of courts. Restatement of the Law of Trusts, tentative draft, section 183. To a certain extent these attempts have been successful. * * *." Appellant says the author (Bogert) attributes these exceptions, in cases of alimony and child support, to the argument that such obligations are of common-law origin "entirely outside contract principles" and that the author cites numerous common-law decisions which support the argument.

Appellant refers specifically to and quotes from two decisions: Keller v. Keller, 284 Ill. App. 198, 1 N.E.2d 773, a decision of the intermediate Appellate Court of Illinois, and In re Estate of Moorehead, 289 Pa. 542, 137 A. 802, 52 A. L. R. 1251.

These decisions are not very persuasive here. They were rendered while the wife and children were in present need of support. In the Moorehead case the family relation still existed, and the court by examining the entire will found testatrix must have meant the entire family to be benefited by the trust. Here the claim is based on a judgment rendered almost eighteen years before the probate of the will creating the trust in question. The children are already adult. Certainly recognition of the limitations upon alienation, either voluntary or involuntary, in the trust we are considering cannot be charged with any injustice growing out of the failure of the beneficiary to comply with the terms of the divorce decree rendered in 1932. No showing is made as to how or by whom the four children were supported except a stipulation that testator furnished appellant and her children "living quarters and fuel * * * for several years after entry of the divorce decree." At some stage appellant was remarried but her remarriage date is not shown. Appellant is not seeking money for the support of her children in the sense apparently intended by the Restatement and the cited cases.

In oral argument appellant's attorney, in response to a query from the court, disclaimed any special advantage growing out of the nature of her claim in the respect we are now discussing. Nor does the printed brief urge it as more than an extreme example. Were the issue squarely presented some of our decisions would require consideration. See e.g. Roorda v. Roorda, 230 Iowa 1103, 300 N.W. 294, and Wagner v. Wagner, 240 Iowa 1113, 1118, 38 N.W.2d 609. Under the record however further discussion of this question seems unnecessary.

VII. The trustee argues the trust is discretionary by reason of alleged attempts by the beneficiary to alienate. The trustee pleads this and argues it apparently as an additional reason for holding the trust to be discretionary because of its provision that any such attempt by the beneficiary would give the trustee a discretion to exclude the beneficiary "from all interest in said trust funds."

'The trial court's decision does not seem to be based on that ground. It does however hold the trust discretionary with the trustee. The beneficiary does not complain and is apparently content to let the decision so stand. It can make no difference to appellant in any event.

The decision will accordingly be affirmed.—Affirmed.

All JUSTICES concur.