Phyllis Alberta Floerchinger, appellant, v. Pete Williams et al. and Federated Church, Oxford, Iowa, appellees.

No. 52040.

(Reported in 148 N.W.2d 410)

54

FEBRUARY 7, 1967.

John D. Randall, of Cedar Rapids, for appellant.

Messer & Cahill, of Iowa City, for appellees.

SNELL, J.—From an adverse ruling on one division of her action plaintiff has appealed with our permission.

Plaintiff's action is in two divisions. The first division is a will contest alleging lack of testamentary capacity and undue influence. The issues tendered therein have not been tried and are not involved in this appeal. The will under attack in the will contest appears to have been executed in Washington County, Arkansas, in March 1965. The exact date does not appear.

Division II of plaintiff's petition and the one with which we are now concerned asks that a will dated July 19, 1962, with a codicil dated June 24, 1963, be declared to be the last will and testament by virtue of a contract between testatrix and her predeceased husband. This issue was transferred to and was tried in equity.

John J. Williams and Lydia A. Williams were husband and wife. They were the parents of one child, Phyllis Alberta Floerchinger, plaintiff herein. Mr. and Mrs. Williams each owned property.

On July 19, 1962, after consultation with their attorney and preparation and revision by him each executed a separate will. The separate wills were executed at the same time, in the presence of each other. Each maker had knowledge of the respective provisions of each will.

On June 24, 1963, separate codicils were executed to correct an omission in description of real estate.

Mr. Williams' will gave his personal property in the nature of moneys and credits to his wife. He gave his other personal property to his daughter. He gave a specifically described farm to his grandson, Larry Floerchinger. He gave a specifically described farm of 204.83 acres to a nephew Peter Williams. He gave the remainder of his estate to his daughter. He nominated a friend (not a relative) as executor.

Paragraphs 9 and 10 of the will provided:

"In making this will I have consulted with my attorney, Emil G. Trott of Iowa City, Iowa, and he knows what my wishes are and I therefore appoint him as attorney for my estate.

"I realize that in making this will I may not have taken full advantage of the marital deduction for federal estate tax pur-

poses. However, my wife and I have thoroughly discussed this and we feel that other things are more important to us than the saving in taxes."

The record before us does not show the size of his estate but we assume that the bequest to testator's wife was less than one half of his estate.

The will executed by Mrs. Williams on July 19, 1962, gave all of her property to her husband except a specifically described farm given to her daughter. If her husband predeceased her all of her property was to go to her daughter. Her will nominated her husband as executor with an alternate (the same person as nominated by her husband) if her husband could not serve. The last two paragraphs in her will are the same, except for substitution of the word "husband" for "wife", as the words in Mr. Williams' will quoted above.

The quoted paragraphs say that the husband and wife had discussed the tax consequences of their respective wills. There is not a word therein that the wills were contractual in nature. They are not reciprocal or mutual in their provisions.

Mr. Williams died December 13, 1964. Probate of his estate appears to be substantially complete. His widow elected to take under the provisions of the will. How much she received does not appear.

Shortly after her husband's death Mrs. Williams moved to Arkansas where her daughter lived.

In March 1965, the exact date not appearing, Mrs. Williams executed a new will in Washington County, Arkansas. She gave her daughter $100 and otherwise disposed of her property by specific bequests to persons not related to her with the remainder to Pete Williams and Dorothy Williams, his wife. Although not material to the problem before us we assume that Pete Williams is the same person as Peter Williams named in Mr. Williams' will.

Plaintiff, in support of her claim that the 1962 wills were contractual and mutual, offered witnesses who gave oral testimony as to the circumstances and statements coincident with their execution. The witnesses were the attorney who prepared the wills, his wife who was one of the witnesses to the codicil

of Mr. Williams and the law associate of the attorney. From the voir dire examination it appeared that there was an outstanding contingent fee contract between the attorney and plaintiff dependent upon the outcome of plaintiff's litigation. Timely and appropriate objections to the testimony and to the competency of the attorney as a witness under the dead man statute were made.

The trial court held that plaintiff did not acquire an accrued and vested interest at the time of the execution of the wills and codicils on July 19, 1962, and June 24, 1963; that the wills and codicils were not mutual and contractual within the meaning of section 270 of the Iowa Probate Code; and that Mrs. Williams was not precluded from making a new will after the death of her husband. The trial court's decision was based on the provisions of the Iowa Probate Code. This proposition should be first considered. Pertinent dates should be kept in mind.

The wills sought to be established as mutual and contractual were executed July 19, 1962, with codicils dated June 24, 1963.

Mr. Williams died December 13, 1964.

Mrs. Williams executed a new will in March 1965.

Mrs. Williams died between March 1965 and May 21, 1965, the exact date not appearing.

I. The Iowa Probate Code, now appearing as chapter 633, Code of 1966, was enacted by the Sixtieth General Assembly and was approved May 16, 1963. By its terms it took effect and was in force on and after January 1, 1964. It has been amended in several particulars but not as to the provisions involved in the case before us.

Section 633.2 provides:

"1. Effective date. This Code shall take effect and be in force on and after January 1, 1964. The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this Code. It shall also govern further procedure in proceedings in probate then pending, except to the extent that, in the opinion of the court, its application in particular proceedings or parts thereof would not be feasible

or would work injustice, in which event the former procedure shall apply.

"2. Rights not affected. No act done in any proceeding commenced before this Code takes effect and no accrued or vested right shall be impaired by its provisions. * * *."

Section 633.270 provides:

"Contractual or mutual wills. No will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state his intent that such will shall be so construed."

The wills sought to be established as contractual or mutual did not expressly state an intent that they be so construed and if the Probate Code controls they cannot be so construed.

While not controlling, the comment of the Bar Committee aiding the legislature in compiling the Code is interesting.

"New. Codification of recent Iowa case law to avoid inadvertent mutual wills. The mere fact that a husband and wife make wills at the same time with essentially the same provisions does not usually indicate an intention to make a binding contract so that the survivor may not ever change his will. Those who desire mutual wills are required to say so since theirs is the unusual rather than the usual intent."

The enactment of the Probate Code was not the result of any sudden impulse. It had been the subject of intensive, prolonged study and discussion. It had been approved at the time Mr. and Mrs. Williams ratified and confirmed their wills by codicils dated June 24, 1963. Its effective date was specifically fixed nearly six months later than the customary July 4th date. It became effective eleven months and twelve days before Mr. Williams died. It governed the proceedings here involved because the statute so provides.

II. We do not have the question of prospective or retrospective application of the statute. The statute says when it shall become effective and to what it should apply. It governs "all proceedings in probate brought after" January 1, 1964, except as mentioned therein. As noted, supra, all proceedings were subsequent.

III. While the vesting of an interest in an estate may be postponed until sometime subsequent to the death of a testator the well established rule is that a will speaks from the death of the testator. "It is fundamental law that a will speaks from the death of testator, and rights of the parties accrue at that time." In re Estate of Hill, 258 Iowa 1186, 1190, 140 N.W.2d 711, 713, and citations.

No rights vested upon the execution of the 1962 wills.

IV. In re Estate of Lundgren, 250 Iowa 1233, 1236, 1237, 98 N.W.2d 839, says:

"The essential characteristic of a testamentary instrument is that it operates only upon and by reason of the maker's death. Until then it is ambulatory. By its execution the maker parts with no rights and divests himself of no part of his estate and no rights accrue to, or vest in, any other person." (Citing authorities)

In 94 C. J. S., Wills, section 128 says:

"A will does not take effect until the death of the testator, and produces no legal effect on the property bequeathed or devised, and gives no interest therein to the legatee or devisee, until that time."

As noted supra in Division I the Probate Code provides that "No act done in any proceeding commenced before this Code takes effect and no accrued or vested right shall be impaired by its provisions." Plaintiff-appellant argues that her rights were preserved by this reservation. The weakness in this position is in the fact that on the effective date of the statute plaintiff had no rights. No proceeding had been commenced. Neither Mr. nor Mrs. Williams was dead. Their wills had not yet spoken. The statute did not impair any existing rights because no rights had yet attached, accrued or vested.

We quote with approval from the trial court's opinion:

"The words 'accrued and vested' denote a present, enforceable claim or demand, that which is fixed, settled and absolute, an immediate interest to present or future enjoyment, an interest of absolute ownership not contingent nor subject to be defeated or changed. The testators in the instant case could have changed their wills by either testator giving notice to the

other, and no accrued or vested interest could be acquired until the death of one of the testators."

V. We conclude that where as here the will speaks from a date subsequent to the effective date of the Iowa Probate Code its construction is controlled and limited thereby. The wills involved cannot be construed as contractual or mutual.

VI. Our conclusion makes unnecessary a discussion as to the admissibility or sufficiency of the tendered oral testimony.

The case is—Affirmed.

All JUSTICES concur.