HOWARD L. SAWYER et ux., individually and as assignee for their children, appellants, v. MERL R. SAWYER et al.; STANLEY L. DAVIS, executor and trustee of estate of Doil S. Hunter, appellees.

No. 52553.

(Reported in 152 N.W.2d 605)

114

AUGUST 31, 1967:

John D. Randall, of Cedar Rapids, for appellants.

D. M. Elderkin, of Cedar Rapids, for appellee Stanley L. Davis as executor and trustee of the estate of Doil S. Hunter.

GARFIELD, C. J.—Howard L. Sawyer, oldest of four issue to survive his mother Doil S. Hunter, and his wife Hulda, brought this action in equity in four counts seeking, in effect, to set aside a trust created by the mother's will in the share bequeathed to Howard (to whom we refer as plaintiff). Defendants are Howard's two brothers, a sister and the sister's husband as executor and trustee under the will. Following trial relief was denied and plaintiff has appealed. We affirm the decision.

Briefly, count 1 of plaintiff's petition alleges his mother's will, made November 2, 1961, creating the trust, violated an oral agreement between her and her second husband Sam Hunter (plaintiff's stepfather) under which reciprocal wills made by them January 15, 1959, were also mutual and became irrevocable upon Sam's death February 11, 1960. The bequests to plaintiff under the earlier wills were outright, not in trust.

Count 2 alleges the trust provisions of the mother's 1961 will are so unreasonable as to be void.

Count 3 alleges the oral agreement referred to in count 1 and the earlier wills made pursuant thereto were for the benefit of plaintiff, his brothers and sister and their rights thereunder vested upon Sam's death in 1960. It is obvious that if plaintiff could not recover under count 1 no recovery may be had under count 3 since both are based on the alleged oral agreement to make the 1959 wills irrevocable upon the death of the first to die.

Finally, count 4 of the petition alleges the four children of plaintiff (all adults) have assigned to him their remainder

interest in the trust property; in the event the court should hold such assignment did not merge in plaintiff all interests in the trust, plaintiff and his wife will waive the assignment and tender into court an assignment from them to their children of the formers' interest in the trust property so title thereto will vest in the children; in the event neither of such assignments is recognized as valid, plaintiff and his wife refuse to take under the will and consent that the interest of plaintiff may vest in the children.

The trial court held proof of the oral agreement declared upon in counts 1 and 3 was wholly insufficient; the alleged unreasonableness of the trust provisions of the mother's 1961 will affords no basis for setting them aside; the trust is a spendthrift one which the beneficiaries may not terminate as attempted here.

I. We first consider a preliminary question. Two weeks after the petition was filed in November 1964 Attorney Keith Mossman entered his appearance and filed answer for all defendants except one brother, Merl Sawyer. Four days before trial was to start in May 1966 Mr. Mossman withdrew his appearance but there was no withdrawal of the answer he had filed which denied the allegations of the original petition consisting only of the first two counts above summarized. Two days before trial Attorney D. M. Elderkin entered his appearance for the estate of Doil S. Hunter and the executor and trustee thereof. Thereafter plaintiff amended his petition by adding counts 3 and 4 and defendants Raymond Sawyer and his sister, as well as the executor-trustee, filed answers to the petition as amended.

At commencement of the trial plaintiff's counsel asked that since Mr. Elderkin represented only the estate and the executor-trustee, judgment be entered as against the individual defendants (two brothers and the sister) for specific performance of the alleged oral agreement for the making of mutual and irrevocable wills. Defendants were all present in court for the trial and all had answers on file. The court reserved ruling on the request of plaintiff's counsel but denied it at the outset of the final decision. Plaintiff contends the ruling was error. We hold it was correct.

The withdrawal of appearance by an attorney does not have the effect of withdrawing his client's appearance or pleadings filed in the latter's behalf. Baker v. Baker, 248 Iowa 361, 365, 81 N.W.2d 1, 3, 64 A.L.R.2d 1421, 1424 and annotation, 1424, 1434–1435, 1443–1444 and citations, note 20; Harris v. Juenger, 367 Ill. 478, 11 N.E.2d 929, 930; 6 C.J.S., Appearances, section 30a, page 70; 5 Am. Jur.2d, Appearance, section 37, page 510.

However, an authorized or otherwise rightful withdrawal of the appearance of a party defendant leaves the case in the same condition as if the appearance had never been entered and operates as a withdrawal of defendant's pleadings. Annotation, 64 A.L.R.2d 1424, 1451 and citations, notes 9 and 10; 6 C.J.S., Appearances, section 30b, page 70; 5 Am. Jur.2d, Appearance, section 39, page 512. See also rule 230(c), Rules of Civil Procedure. There was no such withdrawal here.

Of some application is the rule that trials upon the merits are favored and defaults avoided if fairly possible. Severson v. Sueppel, 260 Iowa 1169, 1177, 152 N.W.2d 281, 286 and citations.

II. Considering now plaintiff's claim in counts 1 and 3 that the 1959 wills were made pursuant to an oral agreement they were mutual and would be irrevocable upon the death of the first to die (Sam Hunter), we find no substantial evidence to support such claim. Indeed the evidence is these wills were not made in pursuance of such an agreement.

The earlier wills and Doil S. Hunter's 1961 will were all prepared by Attorney Mossman. Plaintiff called him as his first witness. He testified on direct examination Doil and Sam came to his office together the day the 1959 wills were prepared and discussed with him the terms of the two wills each desired to make.

On cross-examination Mr. Mossman said he explained to them that if they drew a joint and mutual will the survivor could not change it after the death of the other; they both stated they did not want such a will, they wanted the right to make a new will after the death of the first to die and asked him to prepare separate wills without any agreement or pro-

vision the wills could not be so changed; accordingly such separate wills were prepared and executed; if the will were intended to be mutual and irrevocable upon the death of the first to die he would have prepared only one joint will for both to execute, reciting therein the agreement under which it was made, as was his custom where irrevocable provisions were desired:

On redirect examination by plaintiff's counsel Mr. Mossman testified: "I recall they came to my office and wanted separate wills prepared. They did not want a joint and mutual will. I prepared separate wills that could be changed after the death of either party as it was their intention expressed to me at that time that is what they wanted."

■ The term "mutual" is properly applied to wills in this class of cases only where there is sufficient evidence to show a binding agreement to dispose of property of the makers in a certain way. Without such evidence the wills may be reciprocal but they are not mutual. Fr. Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 608, 106 N.W.2d 637, 640 and citations; In re Estate of Croulek, 252 Iowa 700, 704, 107 N.W.2d 77, 79; In re Estate of Logan, 253 Iowa 1211, 1215, 115 N.W.2d 701, 704.

■ Plaintiff had the burden to prove by clear and satisfactory evidence the alleged oral agreement declared upon in counts 1 and 3. In re Estate of Lenders, 247 Iowa 1205, 1213, 78 N.W.2d 536, 541 and citations; Vilter v. Myers, 255 Iowa 818, 820, 123 N.W.2d 334, 336, 337 and citations.

■ Prior to our Lenders decision we had said several times the existence of such an agreement might be inferred from the execution of reciprocal wills by a husband and wife, at substantially the same time, each with knowledge of the other. However in Lenders we said: "According to the great weight of authority there must be other evidence of a contract between the testators." (Page 1214 of 247 Iowa, page 541 of 78 N.W.2d.)

We have followed the statement just quoted in many subsequent decisions, including In re Estate of Ramthun, 249 Iowa 790, 802, 89 N.W.2d 337, 344; Allinson v. Horn, 249 Iowa 1351, 1356, 1357, 92 N.W.2d 645, 648; Barron v. Pigman, 250 Iowa 968, 972, 95 N.W.2d 726, 729; Fr. Flanagan's Boys' Home v.

Turpin, supra, 252 Iowa 603, 609, 106 N.W.2d 637, 640; Vilter v. Myers, supra, 255 Iowa 818, 820, 123 N.W.2d 334, 337.

■ We find no substantial evidence of the claimed oral agreement here in addition to the inference that might arise under our earlier decisions from the simultaneous execution of reciprocal wills, each with knowledge of the other maker. Even under such decisions certainly the inference referred to could not prevail over the positive testimony of the scrivener, a reputable attorney, that the makers instructed him they did not want a mutual will or mutual wills. Under our cases commencing with In re Estate of Lenders, supra, it is clear plaintiff is not entitled to the relief asked in counts 1 and 3.

III. Reference should be made to the new Iowa Probate Code, now chapter 633, Code 1966, enacted in 1963. By its terms it took effect January 1, 1964. Code section 633.2, subsection 1. However, section 633.2, subsection 2 in part provides "no accrued or vested right shall be impaired by its provisions."

■ This action was commenced in May 1964. However, as stated, Sam Hunter died February 11, 1960. If the 1959 wills were mutual as plaintiff claims, his rights thereunder accrued and vested upon Sam's death. This is the plain effect of our decision in Floerchinger v. Williams, 260 Iowa 53, 148 N.W.2d 410, 413, 414. See also In re Estate of Croulek, supra, 252 Iowa 700, 703, 107 N.W.2d 77, 79 and citations. Until then either Sam or Doil could have changed his or her will by giving notice thereof to the other. Citations last above.

■ Section 633.270 of the Probate Code provides: "No will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state his intent that such will shall be so construed." See comment concerning this provision quoted in Floerchinger v. Williams, supra, of the committee of the State Bar Association which formulated the Probate Code.

If the quoted provision were applicable here, the 1959 wills could not be construed to be contractual or mutual since they contain no statement of intent they should be so construed. However, since, as stated, plaintiff's rights under the 1959

wills, if they were mutual, accrued or vested in 1960 and would be impaired by application of 633.270, supra, the section, by the express terms of section 633.2, subsection 2, supra, does not apply to this case.

In this respect there is a vital distinction between the facts here and those in Floerchinger v. Williams, supra. There the death of the first spouse to die did not occur until December 1964 and no rights vested under his will alleged to be mutual until then—nearly a year after the effective date of the Probate Code.

 IV. Plaintiff is not entitled to relief on the ground stated in count 2 that the trust provisions in his mother's 1961 will are so unreasonable as to be void. The will directs that the maker's property be converted into cash and divided into four equal parts; plaintiff's share to be held in trust for his benefit; $500 thereof paid to him as soon as practical; $30 per month shall be paid to plaintiff during his life from the income and principal of his share; at plaintiff's death the monthly payments shall go to plaintiff's wife; upon her death the balance shall be divided equally among the surviving children of plaintiff and his wife and the trust terminated; if no children survive plaintiff and wife such balance will be divided equally among plaintiff's surviving brothers and sister.

The 1961 will also provides that the right of any beneficiary to receive the income from the trust shall be free from interference or control of his or her creditors and shall not be anticipated by assignment or applicable to payment of his or her debts.

We would be justified in ignoring plaintiff's count 2 on the ground no proposition is stated or argued to the effect relief should have been granted under this count. Hence the proposition is deemed waived. Rule 344(a)(4)(Third), Rules of Civil Procedure. However since a large part of the evidence plaintiff offered was an attempt to show the trust provisions were unreasonable we will say no relief could properly be granted under count 2.

 It is elementary a will must be given effect unless it contravenes some positive rule of law or public policy. No

such contravention appears here. The property bequeathed was that of plaintiff's mother and she had a sacred right to dispose of it as she saw fit subject only to the qualification just stated. Courts may not make a will for a testator nor impose upon it a forced or unnatural construction to accomplish what may seem a more just or appropriate distribution of the estate. Guilford v. Gardner, 180 Iowa 1210, 1224, 162 N.W.. 261; In re Estate of Heller, 233 Iowa 1356, 1365, 11 N.W.2d 586, 591; In re Estate of Logan, supra, 253 Iowa 1211, 1217, 115 N.W.2d 701, 705; 95 C.J.S., Wills, section 590.

V. Plaintiff claims there was a merger of all interests in the trust property by the assignment to him from his adult children (remaindermen) or by his assignment to them.

■ This trust is a spendthrift trust at least as to the income payable to plaintiff, the life beneficiary, in that by the terms of the trust a valid restraint is imposed on the voluntary and involuntary transfer of the beneficiary's interest. In re Estate of Tone, 240 Iowa 1315, 1324, 1325, 39 N.W.2d 401, 407 and authorities cited; Gunn v. Wagner, 242 Iowa 1001, 1009, 48 N.W.2d 292, 296, 297; In re Estate of Bucklin, 243 Iowa 312, 51 N.W.2d 412, 34 A.L.R.2d 1327; 89 C.J.S., Trusts, section 21, pages 733, 734. Of course, without the corpus or principal of the trust estate it would yield no interest.

We are satisfied this trust cannot be terminated by the court in the manner attempted here. In the first place, there are contingent interests in the trust which are not represented in the case and those where the holders do not consent to termination of the trust. The trust, supra (division IV), provides that upon the death of plaintiff and his wife the balance shall be divided among their children who then survive, and if there are none, among plaintiff's brothers and sister who then survive. It is entirely possible issue, yet unborn, of plaintiff and his wife may survive them. Obviously, consent of such issue to terminate the trust cannot be had. "Equity will not terminate a trust under which after-born children may take an interest." 89 C.J.S., Trusts, section 93d, page 930. See also 54 Am. Jur., Trusts, section 76, page 78.

■ The tendency of American decisions is to treat the possibility of issue as one which prevents the distribution of trust property and American courts generally refuse to terminate a trust which would be affected by the birth of issue. 54 Am. Jur., Trusts, section 71; Annotations, 67 A.L.R. 538, 548, 146 A.L.R. 794, 799; In re Bosler's Estate, 378 Pa. 333, 107 A.2d 443, 444 and citations note 1.

It is also possible, although unlikely, no issue may survive plaintiff and his wife. As stated, plaintiff's surviving brothers and sister would then become beneficiaries. One brother and the sister object to termination of the trust and want the mother's will carried out. Thus, not all beneficiaries of the trust consent to its termination.

■ Moreover, a spendthrift trust created by will cannot be terminated by a court if contrary to the express wish of the settlor even though all beneficiaries desire that it should be. Of course Doil S. Hunter is incapable of consenting to termination of the trust.

"The cases are adamant in holding that where the life interest is limited by a spendthrift provision the trust cannot be terminated by the court. [citations] * * *

" ' * * * The law's only concern is to give effect to the will of the donor as he has expressed it.' * * *

"But if * * * the settlor be deceased and therefore incapable of consenting, such a [spendthrift] trust cannot be terminated even though all the beneficiaries desire that it should be." In re Bosler's Estate, supra, 378 Pa. 333, 337, 338, 107 A.2d 443, 445.

"Also, a spendthrift trust is not terminable by the consent of those whom it is designed to protect. Furthermore, a trust ordinarily cannot be terminated by the consent, contract, conveyance, or transfer of a beneficiary unless the object of the trust has been attained, or at least practically accomplished, * * *." 54 Am.Jur., Trusts, section 75, page 77.

■ *"Spendthrift trust.* If by the terms of the trust * * * the interest of one or more of the beneficiaries is made inalienable by him * * * the trust will not be terminated while such inalienable interest still exists, although all of the beneficiaries desire to terminate it or one beneficiary acquires the whole

beneficial interest and desires to terminate it." Restatement, Trusts, Second, section 337(2), Comment 1. See also id., section 338, Comment a.

As stated at the outset, plaintiff's count 4 alleges that if neither the assignment from his children to him nor the one from him and his wife to the children is recognized as valid then plaintiff and wife refuse to take under the will and consent that the court make such orders as vest their one-fourth share in their children.

The share left in trust for plaintiff cannot be transferred to the living children in this manner anymore than by the attempted assignment to them from plaintiff and his wife. If plaintiff and his wife desire to renounce all interest under the will, of course they may do so, but refusal to take under the will upon condition such interest be held to vest in the children now living is not such a renunciation. Plaintiff is attempting to acquire outright for either him and his wife or for their living children the share the mother left in trust. This they may not do under the circumstances here.

VI. One contention of plaintiff is that the trial court prejudged the case by expressing an opinion as to its merits after hearing Mr. Mossman's testimony and part of the testimony of the second witness. The court indicated some impatience at the offer of evidence he felt, not without reason, was immaterial under the issues. In any event, we do not reverse an equity case upon a complaint such as this. Our review of both the facts and the law is de novo and we draw such conclusions therefrom as we deem proper. Rule 334, Rules of Civil Procedure; Arnold v. Arnold, 257 Iowa 429, 433, 133 N.W.2d 53, 56 and citation. We are unwilling to admit we have prejudged the case.

Upon consideration of all propositions presented the decree is—Affirmed.

All JUSTICES concur except LeGRAND, J., who takes no part.