# IN THE SUPREME COURT OF IOWA

No. 21–0953

Submitted March 23, 2022—Filed May 6, 2022

**KATINA M. LITTLE,**

Appellee,

vs.

**KEITH A. DAVIS** and **DONALD J. DAVIS,** Co-Trustees of the DONALD K. DAVIS and COLLEN DAVIS FAMILY TRUST,

Appellants.

---

Appeal from the Iowa District Court for Keokuk County, Crystal S. Cronk, Judge.

Trustees appeal from a grant of summary judgment in favor of a trust beneficiary who alleges a purported modification of the trust was invalid. **AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

John G. Daufeldt of John C. Wagner Law Offices, P.C., Amana, for appellants.

Randall C. Stravers of Stravers Law Firm, Oskaloosa, for appellee.

**McDONALD, Justice.**

This case concerns a beneficiary's challenge to modifications of the dispositive provisions of an irrevocable trust. The Iowa Code provides that an irrevocable trust may be modified in one of two ways. First, without court approval, "[a]n irrevocable trust may be modified or terminated upon the consent of the settlor and all of the beneficiaries." Iowa Code § 633A.2202(1) (2020). Second, with court approval, "[a]n irrevocable trust may be terminated or its dispositive provisions modified . . . with the consent of all of the beneficiaries if continuance of the trust on the same or different terms is not necessary to carry out a material purpose." *Id.* § 633A.2203(1). The question presented in this appeal is whether the *surviving* settlor of an irrevocable trust can, with the consent of all of the beneficiaries, modify the dispositive terms of an irrevocable trust without court approval.

I.

Husband and wife Donald K. and Collen Davis established the Donald K. & Collen Davis Family Trust in February 2016. The trust agreement provided that while Donald and Collen were both living and competent, the trust could "be altered or amended by written instrument signed by both Co-Trustors." The trust agreement also contained an irrevocability provision stating that "[u]pon the death of the first Co-Trustor to die . . . the then surviving Co-Trustor . . . shall <u>not</u> have the power to amend, revoke and/or terminate the [trust]." Upon the death of the surviving spouse, the trust estate was to be distributed equally to Donald's four children: Keith Davis, Jeffrey Davis, Donald J. Davis, and Katina

Little. The primary asset of the trust was Donald's farmland, which he acquired prior to marrying Collen, but which was held jointly by them. The apparent purpose of the trust was to protect Donald's farmland from any claims of Collen (or her children from a previous relationship) in the event Donald predeceased Collen. Donald did not predecease Collen; Collen died in September 2017, leaving Donald as the surviving trustor (or settlor) and the surviving trustee.

At some point after Collen's death, Donald decided he wanted to amend the dispositive terms of the trust. His attorney prepared a two-page document entitled "Consent to Modify Trust Agreement." The consent document acknowledged that the trust agreement provided the surviving trustor did not have the power to amend, revoke, or terminate the trust. The consent document stated the purpose of the irrevocability provision—to protect Donald's farmland against any claims from Collen or her children—no longer existed. The second page of the consent document contained signature lines for Donald and each of the four beneficiaries of the trust underneath a single paragraph. That paragraph stated:

> THEREFORE, the undersigned, being the current trustee, the current income beneficiary, and all of the adult beneficiaries who would receive a share of the trust if Donald K. Davis was not living, hereby agree that Donald K. Davis, as surviving Trustor and as surviving Trustee, shall have the power and authority to alter, amend, or revoke the DONALD K. & COLLEN DAVIS FAMILY TRUST[.]

Donald and his four children, including appellee Katina Little, signed the consent document on different days in April and May of 2018.

On May 30, 2018, Donald executed a document entitled "First Amendment to Trust Agreement of Donald K. & Collen Davis Family Trust." The amendment altered the disposition of the trust estate. Upon Donald's death, under the amendment, Donald's farmland was to pass one-half each to his sons Donald J. and Keith. Meanwhile, Jeffrey was to receive $50,000, and Little was to receive $25,000. The remainder of the trust estate was to be divided evenly between the four beneficiaries. The amendment also changed the trustees to succeed Donald after his death. The 2016 trust agreement provided Donald's four children would succeed Donald as co-trustees, but the amendment provided that only Donald's sons Donald J. and Keith would succeed Donald as co-trustees.

This suit arises out of Little's challenge to the validity of the amendment to the trust agreement. Donald died on November 13, 2019. According to the terms of the amended trust agreement, Donald J. and Keith became trustees of the trust. In January 2020, Little received a notice regarding the disposition of the trust estate that contained a copy of the 2016 trust agreement and the 2018 amendment to the trust agreement. Little filed this suit against Donald J. and Keith as trustees. In her petition, Little contended the amendment to the trust agreement was void.

The parties filed cross-motions for summary judgment. The co-trustees argued the amendment was valid because Iowa Code section 633A.2202(1) provides that an irrevocable trust can be modified with the consent of the settlor and all of the beneficiaries. Little asserted several reasons why the amendment was not valid. First, she argued the trust agreement, by its own terms, could not

be amended, revoked, or terminated after Collen's death. Second, she argued the amendment was void without court approval because Collen could not and did not consent to the amendment. Third, she argued the amendment was invalid because the consent document did not identify the dispositive terms of the trust that were to be modified. Finally, she argued she did not knowingly and voluntarily consent to the amendment. In support of this last argument, Little testified in her deposition that Donald pressured her to sign the consent document. She testified she was visiting her father on April 25, 2018, when he asked her to sign a one-page document. Little noticed that a staple had been torn out of the document but there was no other page attached. Little asked to see the other page and recalled that Donald looked for the additional page but was unable to find it. Little testified that Donald became "more and more agitated" as he was unable to find the missing page. Finally, Donald explained the purpose of the document was to "tak[e] Collen's name off" the trust agreement. Little signed the document despite not seeing the other page. The document she signed was only the second page of the two-page consent document.

The district court granted Little's motion for summary judgment and denied the trustees' motion for summary judgment. The district court held the amendment to the trust agreement was "void for lack of authority." In reaching that conclusion, the district court relied on Iowa Code section 633A.1105, which states, "The terms of a trust shall always control and take precedence over any section of [the] trust code to the contrary." In the district court's view,

section 633A.1105 compelled the conclusion that the provision of the trust agreement stating that the surviving settlor could not amend, revoke, or terminate the trust was controlling and disallowed modification of the trust under any circumstances. Finding the issue dispositive, the district court did not address the other arguments raised by the parties.

## II.

"The standards for granting summary judgment are well established and need not be repeated in full herein." *Kostoglanis v. Yates*, 956 N.W.2d 157, 158 (Iowa 2021). Review of summary judgment rulings is for correction of errors at law. *Id.* "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McQuistion v. City of Clinton*, 872 N.W.2d 817, 822 (Iowa 2015). When an appeal from a district court's ruling on a summary judgment motion requires us to resolve a legal question by interpreting a statute, our review is also for correction of legal error. *Homan v. Branstad*, 887 N.W.2d 153, 164 (Iowa 2016). We can affirm the district court's grant of summary judgment on any ground urged on appeal that was also raised in the district court. *See Pitts v. Farm Bureau Life Ins.*, 818 N.W.2d 91, 97 (Iowa 2012).

## A.

Before 2000, the law of trusts was scattered throughout the Probate Code, various other statutes, and judicial decisions. *See* Martin D. Begleiter, *In the Code We Trust—Some Trust Law for Iowa at Last*, 49 Drake L. Rev. 165, 171 (2001) [hereinafter Begleiter]. To bring greater clarity to the law of trusts, the

general assembly adopted a comprehensive Trust Code in 1999, which is now codified in Iowa Code chapter 633A. *Id.* While the Trust Code now controls many aspects of the law of trusts, it "does not attempt to cover every area of trust law nor provide for every situation." *Id.* at 185. Rather, "[e]xcept to the extent that [chapter 633A] modifies the common law governing trusts, the common law of trusts shall supplement th[e] trust code." Iowa Code § 633A.1104. Prior judicial decisions thus remain an integral part of the law of trusts and should be harmonized with the Trust Code. *See id.*; *see also, e.g.*, *Keating v. Keating*, 165 N.W. 74, 77–78 (Iowa 1917) ("Even in the absence of statute the authority to entertain complaints alleging improper or arbitrary and unreasonable conduct of trustees in the administration of trusts has long been held to be inherent in courts of equity.").

## B.

With that background, we turn our attention to the district court's ruling. The district court held the amendment to the trust agreement was void. In reaching that conclusion, the district court relied on Iowa Code section 633A.1105. That Code section provides:

> The terms of a trust shall always control and take precedence over any section of this trust code to the contrary. If a term of the trust modifies or makes any section of this trust code inapplicable to the trust, the common law shall apply to any issues raised by such term.

Iowa Code § 633A.1105. In the district court's view, section 633A.1105 compelled the conclusion that the terms of the trust agreement—that the surviving settlor could not amend, revoke, or terminate the trust—disallowed any amendment,

revocation, or termination of the trust under any circumstances. We conclude the district court erred in granting summary judgment on this ground.

The district court's analysis of this issue was incomplete. Section 633A.1105 provides the terms of a trust "shall always control." Here, the terms of the trust agreement provide that "[u]pon the death of the first" settlor, the surviving settlor "shall <u>not</u> have the power to amend, revoke and/or terminate" the trust. The terms of the trust clearly express an intent to create an irrevocable trust. *See In re Work Fam. Tr.*, 151 N.W.2d 490, 492 (Iowa 1967) (stating the intent to create an irrevocable trust must be construed from "the language of the trust instrument as a whole"). But the conclusion that the terms of the trust control and that the text of this trust instrument creates an irrevocable trust does not address the question of whether and under what circumstances an irrevocable trust can be amended, revoked, or terminated. That question is answered by the common law and other provisions of the Trust Code.

The district court's holding was contrary to our common law. At common law, an irrevocable trust was not permanently unchangeable. The "traditional rule" was that "an irrevocable trust may be modified or terminated on consent of all the beneficiaries." Begleiter, 49 Drake L. Rev. at 194; *see* Restatement (Second) of Trusts § 338(1) (Am. L. Inst. 1959) ("If the settlor and all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination or modification of the trust, although the purposes of the trust have not been accomplished."); *see also, e.g., In re Green Valley Fin. Holdings*, 32 P.3d 643, 646 (Colo. App. 2001) (applying Restatement (Second) of

Trusts section 338); *Shire v. Unknown/Undiscovered Heirs*, 907 N.W.2d 263, 271 (Neb. 2018) (citing the "common-law principle that a trust can be modified upon the consent of the settlor and all the beneficiaries"). Iowa followed the traditional rule. *See Harrison v. City Nat'l Bank of Clinton, Iowa*, 210 F. Supp. 362, 368–69 (S.D. Iowa 1962) (applying Iowa law and citing Restatement (Second) of Trusts section 338); *Sawyer v. Sawyer*, 152 N.W.2d 605, 611 (Iowa 1967) (stating consent of the settlor and all beneficiaries was required to terminate an irrevocable trust and finding not all beneficiaries had consented to purported termination). The common law rule applies "although the settlor does not reserve a power of revocation, and even though it is provided in specific words by the terms of the trust that the trust shall be irrevocable." Restatement (Second) of Trusts § 338, cmt. *a.*

The district court's holding was also contrary to the Trust Code. Every trust agreement in Iowa executed after July 1, 2000, is presumed revocable and can be revoked or modified by the settlor "[u]nless the terms of the trust expressly provide that the trust is irrevocable." Iowa Code § 633A.3102(1). Thus, for an Iowa trust to be irrevocable, the trust instrument necessarily must contain terms that make it irrevocable. Despite this requirement, Iowa Code sections 633A.2202 and .2203 specify when and how an irrevocable trust can be modified or revoked. *See also* Begleiter, 49 Drake L. Rev. at 194. Were we to read Iowa Code section 633A.1105 as the district court did, then sections 633A.2202 and .2203 would never be operable. As a general rule of statutory construction, we avoid an interpretation or application of a statute that renders other portions of

the statute superfluous or meaningless. *See Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010).

We thus conclude the district court erred in holding that Iowa Code section 633A.1105 rendered the attempted modification of the trust void. An irrevocability provision in a trust instrument makes a trust irrevocable. That same irrevocability provision does not preclude future modification or revocation of the trust when done in accord with the common law and statute.

C.

Although we hold the district court erred in its interpretation and application of section 633A.1105, we conclude the district court's grant of summary judgment should be affirmed on an alternate ground. *See Pitts*, 818 N.W.2d at 97. An irrevocable trust may be modified or terminated without court approval only "upon the consent of the settlor and all of the beneficiaries." Iowa Code § 633A.2202(1). Little argues that where, as here, a trust was created by more than one settlor, it can be modified without court approval *only* with the consent of all settlors. Obviously, Collen could not and did not consent to the modification of the trust. Therefore, according to Little, any modification of the trust required approval of the district court pursuant to Iowa Code section 633A.2203(1). For the reasons set forth below, we agree.

We begin with the plain language of the statute. When interpreting a statute "we seek to determine the ordinary and fair meaning of the statutory language at issue" using "traditional interpretative tools." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). Iowa Code section 633A.2022(1) permits

modification or termination of an irrevocable trust with "the consent of the settlor and all of the beneficiaries." The trustees argue that the statute's use of the singular term "settlor" shows that only the consent of the surviving settlor is required to modify the trust without court approval. We disagree. Iowa Code section 4.1(17) states, "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." *See also Porter v. Harden*, 891 N.W.2d 420, 426 (Iowa 2017); *Sexton v. Lauman*, 57 N.W.2d 200, 202 (Iowa 1953). Nothing in the Trust Code suggests this rule of construction is inapplicable to section 633A.2202. The plain language of the statute thus requires the consent of all settlors of the trust.

This interpretation of the statute is consistent with one of the fundamental tenants of our trust law. Our chief focus when interpreting a trust agreement is to effectuate the intent of the settlor or settlors. *See In re Tr. of Killian*, 459 N.W.2d 497, 499 (Iowa 1990) (en banc) ("The polestar of our analysis is the rule that the testator's (or, in this case, the settlor's) intent must prevail."). We have repeatedly stated that protecting and effectuating the wishes of a settlor is of primary importance to our trust law. *See O'Brien v. Stoneman*, 288 N.W. 447, 447–48 (Iowa 1939) ("[W]e start with the fundamental principle that under ordinary circumstances, one has the absolute right to dispose of his property as he pleases. It is not the business of the courts to interfere with the disposition an aged person makes of her property."); *see also In re Spencer's Est.*, 232 N.W.2d 491, 497 (Iowa 1975) (stating courts are "bound to carry out" the intent of a settlor or testator); *In re Butler's Tr.*, 154 N.W.2d 705, 709 (Iowa 1967) (stating

Iowa courts "prefer[] a rule which emphasizes the intention of the settlor"); *Sawyer*, 152 N.W.2d at 611 (stating "a spendthrift trust created by will cannot be terminated by a court if contrary to the expressed wish of the settlor even though all beneficiaries desire that it should be," in a case where the settlor was deceased and thus "incapable of consenting to termination of the trust"); *Wohlgemuth v. Des Moines Nat'l Bank*, 192 N.W. 248, 250 (Iowa 1923) ("Effect should be given to the intention of the testator, unless to do so would contravene some applicable rule or principle of the common law."); *Guilford v. Gardner*, 162 N.W. 261, 264 (Iowa 1917) ("The meaning being plain and the intent being lawful, there is no room left for controversy. It is not for the court to question or consider the absolute justice of the condition; its only function is to ascertain the testator's intent and give it effect."). To allow the surviving settlor and beneficiaries of an irrevocable trust to amend the dispositive provisions of a trust without court approval is inconsistent with Iowa's focus on protecting the intent of all settlors of a trust, including a deceased settlor.

Persuasive authority supports our conclusion that modification of the dispositive terms of an irrevocable trust requires court approval where all settlors of a trust cannot consent. In *Culver v. Title Guarantee & Trust Co.*, the New York Court of Appeals was faced with a similar question and reached the same conclusion we reach today. 70 N.E.2d 163 (N.Y. 1946). At issue was an irrevocable trust created by three settlors. *Id.* at 164. One of the settlors died, after which the two living settlors and the beneficiaries (the daughter and grandchildren of the deceased settlor) all agreed to modify the trust by returning

to the surviving settlors the portion of the trust principal they had contributed.

*Id.* The applicable statute permitted revocation of a trust as follows:

> Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof.

*Id.* at 165 (quoting N.Y. Pers. Prop. Law § 23 (1946)). The court held the purported revocation by the surviving settlors and the beneficiaries was ineffective. *Id.* First, the court held that the reference to the "creator" of a trust in the revocation statute included, for trusts with multiple settlors, the plural "creators," since New York (like Iowa) construes statutes written in the singular to include the plural. *Id.* Further explaining its rationale, the court stated:

> Were all of the joint settlors living, the consent of each to a revocation either in whole or in part would be necessary. There appears to be equal reason for forbidding whole or partial revocation when one of them is dead and may not be heard. The deceased settlor may have departed this life secure in her belief that she had so arranged her affairs that her daughter would be benefitted, if alive, by the receipt of a principal sum contributed not only by her but by other settlors . . . . We think it fairer and more in consonance with legislative intent not to deprive her by reason of her death, of her right to refuse to consent to partial or total revocation.

*Id.*

Like Iowa and New York, other courts have concluded the interests of the deceased settlor must be protected. *See, e.g., Buckalew v. Arvest Tr. Co., N.A.*, 425 S.W.3d 819, 823 (Ark. Ct. App. 2013) (stating modification of trust was invalid because the settlor was deceased and the court was "required to consent on behalf of a deceased settlor"); *L'Argent v. Barnett Bank, N.A.*, 730 So. 2d 395, 396 (Fla. Dist. Ct. App. 1999) (provision in trust agreement that during "the life

of the *Settlors*, this trust may be amended, altered, revoked, or terminated, in whole or in part, or any provision hereof, by an instrument in writing signed by the *Settlors*" meant amendment was prohibited after the death of one settlor (emphases added)); *Williams v. Springfield Marine Bank*, 475 N.E.2d 1122, 1125 (Ill. App. Ct. 1985) ("Where the power to modify a trust has been reserved to the joint settlors of the trust, both must join in executing an instrument to effectuate a change. An attempted modification by one after the death of the other is a nullity.").

There is some authority to the contrary, but we do not find that authority persuasive. At issue in *In re Frei Irrevocable Trust Dated October 29, 1996*, was an irrevocable trust created by two settlors—a wife and husband. 390 P.3d 646, 649 (Nev. 2017). Shortly after the wife died, the husband and beneficiaries agreed to modify the trust to grant "any beneficiary the right to compel distribution of his or her share of the trust." *Id.* The Supreme Court of Nevada held the modification was not invalid. *Id.* at 650. In the court's view, all beneficiaries and all settlors had consented to the modification—the husband had consented on his own, and though the wife had died, one of the beneficiaries acted through her power of attorney and consented on her behalf. *Id.* at 650 & n.4. *In re Frei* is not in accord with Iowa law, which is focused on protecting the intent of all settlors, including deceased settlors.

To best protect the intent of a deceased settlor who held the power to modify the trust during her lifetime, we should not permit the surviving settlor and beneficiaries to amend a trust on their own after that settlor passes. The

language of Iowa Code section 633A.2202(1) and our rules of statutory construction command this result. The persuasive caselaw from other jurisdictions supports this result. We thus hold that the dispositive terms of an irrevocable trust can be modified without court approval pursuant to section 633A.2202(1) only upon the consent of all settlors and beneficiaries. In the absence of consent by all the settlors and beneficiaries, the dispositive terms of an irrevocable trust can be modified only with court approval pursuant to section 633A.2203(1). Here, the purported amendment was obtained without court approval and is not valid.

## III.

Because we hold that the consent of Donald and the four beneficiaries was insufficient to modify the trust after Collen's death, we need not address Little's argument that she did not effectively consent to the amendment. We affirm the district court's grant of summary judgment in Little's favor and hold the amendment to the Donald K. & Collen Davis Family Trust is invalid.

**AFFIRMED.**