DOROTHY FOLEY et al., appellees and cross-appellants, v. FRANCES E. ENGSTROM, appellant, and MRS. MABEL MORRISSEY, cross-appellee.

No. 48884.

(Reported in 74 N.W.2d 673)

Swisher & Swisher and Edward L. O'Connor, all of Iowa City, for appellant.

Joseph R. Rosborough, of Moline, Illinois, M. E. Baker, of Oxford, and Neill Garrett, of Des Moines, for appellees and cross-appellants.

Arthur O. Leff, of Iowa City, for cross-appellee.

PETERSON, J.—The defendant Frances E. Engstrom and J. Arthur Engstrom were married in Illinois in 1940. Both had been married before. Appellant had one daughter by the previous marriage and J. Arthur Engstrom had seven children by his previous marriage. They are the plaintiffs. There were no children by the second marriage. In September of 1942 defendant moved to Iowa City. She is a nurse and has been employed for many years at Iowa Children's Hospital. Sometime later her husband came to Iowa City and on August 12, 1943, they purchased an apartment house consisting of two apartments, one upstairs and one on the first floor. Some apartment house furniture was acquired as a part of the transaction. The property was purchased under the customary real-estate contract and the first paragraph of the contract was as follows:

"This Agreement, Made in Triplicate, this 12th day of August, 1943, by and between Mary H. Baker, of Iowa City, Iowa, hereinafter known as party of first part, and Frances E. Engstrom and J. Arthur Engstrom, wife and husband, of Iowa City, Iowa, hereinafter known as party of the second part."

The purchase price was $6250, and $1400 was paid in cash. The agreement provides that the balance be paid at the rate of $50 per month. The $1400 cash payment was borrowed from

defendant's daughter. Mr. and Mrs. Engstrom occupied the first-floor apartment. They rented the second-floor apartment for $60 per month. Instead of making payment of $50 per month, the purchasers paid $60 per month, being the rent collected from the upstairs apartment. The property is described as No. 628 North Linn Street.

Mr. Engstrom was employed at the University Hospital. He departed this life intestate on May 13, 1945. After his death his widow continued to occupy the first-floor apartment and to rent out the second-floor apartment for $60 per month and continued to make the payments in said amount on the real-estate contract until the property was sold in May 1949.

On the Sunday after Thanksgiving in 1948, defendant invited the children of Mr. Engstrom, deceased, to her home for dinner. After dinner she stated to them that she would like to have them sign a quitclaim deed to the property. She stated her attorney would come to the house and explain the matter to them, which he did. He told them she wanted to sell the property. The children said that they would not sign the quitclaim deed until they had talked to their attorney in Moline. There was some correspondence between the attorneys with reference to a conference concerning the matter, but such conference was never held.

Mrs. Engstrom did not apply for letters of administration on her husband's estate until December 9, 1948, a few days after the children were at the house for dinner.

In the inventory, which she filed on April 23, 1949, she described the property by legal description and stated that "Decedent had one-half interest in equity as of May 13, 1945, date of decedent's death." Administratrix added "such one-half interest amounting to $750", which statement has no legal significance.

After nothing came of the correspondence between the attorneys with reference to a conference, the attorney for plaintiffs wrote Mrs. Engstrom a letter on March 18, 1949, in which he stated in substance that he was writing on behalf of the children of Mr. J. Arthur Engstrom, deceased, and that they were willing to make sale of the property at an agreeable price, the proceeds to be divided according to the law of descent.

He also stated that unless he heard from her they would start a partition action. On April 23, 1949, Mrs. Engstrom as the administratrix of her husband's estate filed an application for sale of the real estate to pay debts. Under order of court the application was set down for hearing on May 2, 1949, upon one publication of notice in Iowa City Press Citizen, a newspaper of general circulation in Johnson County. The publication was made. On May 3, 1949, an order of court was entered for sale of the property, and appraisers were appointed. The appraisers appraised the interest of the decedent in the property at $750. On May 16, 1949, defendant filed a report of sale stating that she had entered into a contract of sale for the property with Mabel Morrissey at a price of $13,000, of which $2000 was paid in cash, and the balance of $11,000 was to be paid upon execution and delivery of deed. The report of sale was approved by the court. When the transaction was closed defendant paid the balance with interest on the original contract of purchase in the amount of $1899.78. The amount owing to defendant's daughter for the advancement of $1400, with interest, was $1835.99.

When the apartment house was purchased there were some household goods in the house for use of the apartments as furnished apartments. When the property was sold to Mrs. Morrissey a public sale of these articles was held, and same were sold for $100. If these had been the family household goods same would have been exempt to the widow. Section 635.7, Code of Iowa, 1954. Since they were not, they became a part of the estate property, the same as the apartment house.

An application was made for widow's allowance in the probate proceedings and the court made an allowance of $60 a month, for not exceeding six months.

On October 3, 1949, defendant filed final report in the estate and reported that she had collected $750, and that she had expended same as follows: Abstract bill $19.85; surety bond fee $10; 5% commission on sale $37.50; court costs $45.25; funeral expenses $279.95; doctor bill $30; balance paid widow on account of widow's allowance $327.45, total $750.

Her attorneys secured an order of court fixing a time for hearing on the final report and in this order it is provided that

"Notice of said hearing be given all parties in interest by posting a copy of said notice at the front door of the courthouse in Iowa City, Johnson County, Iowa." The notice was posted and contained a general statement directed "To all parties interested in said estate." No personal notice of any nature was ever given to plaintiffs or their attorneys as to any proceedings in the estate. On December 15, 1951, this action in equity was commenced by the children of J. Arthur Engstrom, deceased.

1. The first question to be decided is whether or not J. Arthur Engstrom became the owner of an undivided one-half interest in the property when he and his wife entered into the contract. He was named as one of the purchasers and he signed and acknowledged the contract with his wife. Section 557.15 of the Code, 1954, provides as follows: "Conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed."

There was no contrary intent expressed in the contract. Under fundamental law of ownership the husband became an equal owner with his wife as to this property. Bader v. Dyer, 106 Iowa 715, 77 N.W. 469, 68 Am. St. Rep. 332; In re Estate of Anders, 238 Iowa 344, 346, 26 N.W.2d 67, 68; Lowell v. Lowell, 185 Iowa 508, 511, 170 N.W. 811, 812.

In the case of In re Estate of Anders, supra, the court stated: "The real estate in question was in 1913 conveyed by warranty deed to Frank W. Anders and Flora E. Anders, which deed did not state the nature or share of the interest of each grantee. Section 557.15, Code of 1946, provides such conveyances create a tenancy in common unless a contrary intent is expressed. The grantees are presumed to take equal shares. Williams v. Monzingo, 235 Iowa 434, 439, 16 N.W.2d 619, 156 A. L. R. 508."

In the case of Lowell v. Lowell, supra, the court stated as follows: "Where a conveyance to purchasers of a tenancy in common is silent, they are presumed to take equal shares. In re McConnell (D. C.) 197 Fed. 438; Burkhardt v. Burkhardt, 107 Iowa 369, 77 N.W. 1069; Bader v. Dyer, 106 Iowa 715, 77 N.W. 469, 68 Am. St. Rep. 332; Bittle v. Clement (N. J. Ch.) 54 Atl. 138; Cage v. Tucker's Heirs, 14 Tex. Civ. App. 316, 37

S.W. 180; Oxford v. Barrow, 43 La. Ann. 863, 9 South. 479; Stover v. Stover, 180 Pa. 425, 36 Atl. 921, 57 Am. St. Rep. 654."

We have decisions which have held that where there is evidence that the purchasers contributed unequally to the price, a presumption would arise that they intended to share in proportion to the amount contributed by each. Lowell v. Lowell, supra. No such situation exists in this case. The undisputed record shows the parties borrowed $1400 to make the down payment. This is being repaid as a part of the settlement. Thereafter all payments on the contract were made by the $60 per month rent received from the upstairs apartment.

Various points are urged by the respective counsel concerning the matter of the monthly payments and rents collected. The record shows without dispute that the upstairs apartment was rented for $60 per month during all of the period of ownership of the property, both before and after the death of Mr. Engstrom. The trial court held that under these conditions there was no advantage to Mrs. Engstrom by reason of her having made the payments, and there was nothing to be charged to her as administratrix by reason of collection of rents. This was a proper and sensible holding and we approve same.

II. This action in equity was commenced under authority of section 638.9, Code of Iowa, 1954, which provides as follows: "Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge, and after that time by equitable proceedings, on showing such grounds as will justify the interference of the court."

The proceedings in the estate are in accordance with statute up to the time of the filing of the final report by the administratrix. There are mistakes in her final report. The mistakes are such that they "justify the interference of the court." She reported that she had received as administratrix the sum of $750. She, in fact, received $50 as one half of the proceeds of the auction sale of the household goods, and $6500 as one half of the sale price of the real estate. She should charge herself as administratrix with $6550. She charged herself with the appraised price, and not with the sale price. There is no basis in probate for an administrator or executor to account only

for the appraisal where property is sold. Usually the purpose of the appointment of three appraisers by the court is to guide the administrator as to the price at which the property is to be sold. In this estate the appraisal formed no basis for guidance, and it appears from the evidence that the arrangements for the sale of the property at $13,000 had been made before the application for sale was filed, and the appraisal made.

█ She is entitled to credit for certain items, all of which are shown in the probate proceedings. The probate record was admitted in evidence without objection. One half of the $1899.78 balance on purchase contract, and one half of amount owing defendant's daughter of $1835.99 should be deducted from decedent's interest in the sale of property. Other items for which the administratrix is entitled to credit are as follows: Funeral expenses $279.95; doctor bill $30; surety bond fee $10; one half of cost of extending abstract of title, $9.93; one half of 5% commission of real-estate agency for selling property, $325; widow's allowance as fixed by order of court, $360; all court costs in the estate; administratrix and attorney fees in the estate, including fee for each for extraordinary services rendered in connection with sale of the real estate, same to be fixed by the trial court. To the extent that the court allowed these items we affirm. As to items not allowed we modify and instruct that they be allowed.

We also modify as to the interest computation of the court. The court charged the administratrix with $6550. He then gave her credit for one half of amount due on purchase contract and one half of amount owing defendant's daughter. This is correct. This left a balance of $4632.11. On this amount he charged her interest at 5% from date of sale, or $1454.60. This is not correct. Before interest is charged against defendant she should also be credited with the nine other items paid or payable by her as administratrix. After all deductions have been made, we hold that defendant as administratrix pay interest on amount due plaintiffs at 5% from October 3, 1949, the date of filing the final report. As administratrix she was obligated to pay the heirs their share as of such date.

After deductions have been made the amount which the administratrix will have on hand will be approximately $3000.

The exact amount will be fixed by the trial court in supplemental decree, after he has fixed the fees and made the deductions as heretofore instructed. As surviving widow defendant is entitled to one third, and plaintiffs as heirs are entitled to two thirds, in equal shares. In the supplemental decree, judgment should be rendered against defendant for such amount, with interest.

This section has been under consideration by the court in many cases. Arnold v. Spates, 65 Iowa 570, 22 N.W. 680; Anderson v. Droge, 216 Iowa 159, 248 N.W. 344; Harding v. Troy, 217 Iowa 775, 252 N.W. 521; Tucker v. Stewart, 121 Iowa 714, 97 N.W. 148; In re Estate of Wissink, 242 Iowa 441, 46 N.W.2d 717.

In most cases where equity has granted relief it has been based on fraud. However, the statute clearly provides that equity may take jurisdiction where there are mistakes in the final report. In the early case of Arnold v. Spates, supra, the court referred to the fact that the provisions of the section are effective as to mistakes as well as fraud in the following language at pages 572, 573 of 65 Iowa, page 681 of 22 N.W.:

"Section 2474 [now section 638.9] provides that mistakes in the settlement of an administrator's accounts may be corrected, even after his final settlement and discharge, on showing such grounds for relief in equity as will justify the interference of the court. This proceeding is brought under this provision. Plaintiffs allege that by mistake or fraud the administrator omitted to charge himself in his accounts with a large amount of money which came into his hands as assets of the estate, and that this sum has never been accounted for by him. If the omission to charge himself with the amount occurred by his mistake, and the other circumstances of the case are such as to justify the interference of a court of equity, we have no doubt that a remedy is afforded the parties by said section; and if the administrator fraudulently omitted to include the amount in his reports, or to account for it, it is equally certain that a court of equity would have jurisdiction, even in the absence of any statutory provision, to grant relief against such fraud. * * *

"The allegation here is that the amount in question was not contained in the accounts filed by the administrator. There has, therefore, never been a settlement as to that item. By mistake or fraud it was omitted from the accounts, and hence was not included in the settlement. Besides this, the provision of section 2474 is general. The court is empowered to correct the mistake whenever such grounds for relief are shown as will warrant the interference of a court of equity."

III. Counsel for appellants urge that this action in equity is barred. They cite the provisions of section 638.11 with reference to reopening hearing on final report within three months from the final order. This provision does not apply where the administrator has made a mistake or committed fraud. In Arnold v. Spates, supra, the court also stated:

"It is claimed, however, by defendants, that the time within which proceedings may be instituted for the correction of mistakes in the settlement is limited, by the latter clause of section 2475 [now section 638.11], to three months from the time of the settlement in which the mistake occurred; and that, as plaintiffs did not institute this proceeding for nearly two years after the final settlement in question, their right of action is barred. The provision relied on is as follows: 'Accounts settled in the absence of any person adversely interested, and without notice to him, may be opened within three months, on his application.' We are of opinion, however, that this provision is not applicable to a case where it is claimed the administrator, by fraud or mistake, has omitted to account for a portion of the assets of the estate."

Under section 614.1(5) actions of this type are not barred until after five years.

The question of cases of this type being barred was referred to in Harding v. Troy, supra, page 778 of 217 Iowa, page 523 of 252 N.W., where the court stated as follows:

"The appellants also claim that the order and judgment of the district court, approving the final settlement of the estate of Ollie Padgett, deceased, constituted an adjudication and bar to this action. Code section 12049, in plain and unmistakable language, invests courts of equity with power to correct mistakes

made in settlements in the probate court after the final settlement and discharge of the administrator on showing of such grounds as will justify interference by the court. This power remains with a court of equity for a period of five years after the discharge of the administrator. This court, in the case of In re Estate of Douglas, 140 Iowa 603, at page 606, 117 N.W. 982, 983, said:

" 'The statute under consideration expressly authorizes a correction by equitable proceedings even after final settlement and discharge. And it cannot be doubted that the order in question could have been set aside under such provision, if the action was brought within five years.' "

IV. Mrs. Mabel Morrissey filed a motion to dismiss cross-appeal of appellees, and cross-appellants filed a reply. The motion was submitted with the case and is sustained. On June 24, 1952, the trial court sustained a motion, filed by Mrs. Morrissey, to dismiss the case as to her. No appeal was taken by plaintiffs as to this ruling. As to Mrs. Morrissey this was a final order and she was not a party to the action thereafter. Furthermore, the record shows that appellees make no complaint as to the fact of the sale of the property, nor as to the price. They only ask for what they claim is their share of the proceeds. The proceedings with reference to the sale of the property by the administratrix were regular and the title of Mrs. Mabel Morrissey cannot be challenged.

In view of substantial modification we hold that plaintiffs pay one half of the costs of appeal and defendant pay the other one half.—Motion to dismiss cross-appeal against Mabel Morrissey sustained. Decree and judgment modified and affirmed.

LARSON, C. J., and BLISS, OLIVER, SMITH, WENNERSTRUM, HAYS, and THOMPSON, JJ., concur.