**ESTATE of Eva RANDALL, Deceased, Clarance L. Randall, Jr., Executor of the Estate of Eva Randall, Deceased, Plaintiff-Appellee and Cross-Appellant,**

v.

**Alma McKIBBEN et al., Defendant-Appellants and Appellee-Cross-Appellants.**

**No. 54676.**

Supreme Court of Iowa.

Nov. 11, 1971.

Haupert, Robertson & Johnson, Marshalltown, for defendants-appellants.

Cartwright, Druker, Ryden & Fagg, Marshalltown, for defendants-appellees and cross-appellants Clarence Randall, Jr. and Darlene Randall Eckhart.

Kemler, McGinnis & Lovig, Marshalltown, for defendant-appellee and cross-appellant James Protzman Randall.

Mote, Wilson & Welp, Marshalltown, for Fidelity Savings Bank of Marshalltown, temporary administrator of the Estate of Eva Randall, deceased, plaintiff-cross-appellant.

RAWLINGS, Justice.

Declaratory judgment action initiated by executor of Eva Randall's (decedent's) estate seeking determination of real estate ownership and to quiet title. From trial court's holding adverse to defendants Alma McKibben and her heirs at law they appeal.

By cross-petition, defendants Clarence Randall, Jr. and Darlene Randall Eckhart ask indemnification of life tenant decedent's estate for advancements by her in satisfaction of a mortgage on realty. Trial court awarded relief prayed, with interest, from date of decree. From that adjudication these defendants cross-appeal.

Reversed on both appeals.

The case was submitted to trial court on a "Stipulation of Facts".

August 15, 1894, William Randall and Eva Shipton were married.

February 27, 1904, William G. Randall, for the recited consideration of $6800, bought an 80 acre tract of land in Marshall County. February 28, 1912, W. G. Randall and Eva Randall, as tenants in common, for the recited consideration of $10,800, acquired a nearby 80 acres. These two tracts constitute what is referred to as the "unimproved" farm.

March 1, 1916, Eva Randall and W. G. Randall, as tenants in common, purchased property, 160 acres, for which they paid $32,000. This is referred to as the "improved" farm.

September 8, 1921, William G. Randall and Eva D. Randall (one and the same person as Eva Randall, deceased herein), husband and wife, executed a joint "Last Will and Testament", (Exhibit A).

November 5, 1921, William G. and Eva D. Randall executed a "Codicil", (Exhibit B), to their aforesaid will.

At the time Mr. and Mrs. Randall effectuated the will and codicil thereto, *supra*, they owned the "improved" and "unimproved" farms, both of which were then mortgaged.

When the above mentioned joint will and codicil thereto were executed William G. and Eva Randall had two children, Clarence, (father of Clarence L. Randall, Jr.) and Alma McKibben.

April 13, 1930, William G. Randall died testate, the 1921 joint will and codicil being then in full force and effect.

January 24, 1931, the 1921 jointly executed will of William G. Randall, with codicil thereto, was admitted to probate, Eva being ultimately appointed executrix. She thereafter filed a "First and Final Report" which discloses all property in the estate had been "turned over" to Eva D. Randall as provided in Item II of the joint will, *supra,* for her lifetime use and benefit. Subsequently Eva, in writing individually acknowledged receipt thereof. January 31, 1959, William's estate was closed.

At time of William G. Randall's death the "improved" farm mortgage balance was $10,000, and that on the "unimproved" farm $8000.

September 21, 1932, foreclosure of the "unimproved" farm mortgage was instituted and November 2, 1932, a decree of foreclosure was entered, supplemented July 28, 1934.

March 1, 1933, bankruptcy proceedings were started against Clarence Randall, from which he was discharged August 22, 1933.

November 12, 1934, for $9600, Clarence Randall bought the "unimproved" farm from the mortgage foreclosure purchaser.

November 12, 1934, Clarence Randall placed a $10,500 mortgage on the "unimproved" farm.

May 23, 1967, Eva Randall died, then a resident of Marshall County.

June 5, 1967, a "Will" executed by her August 12, 1961, (Exhibit 1), with "Codicil" (Exhibit 2), dated February 11, 1965, was admitted to probate.

June 5, 1967, Clarence L. Randall, Jr., was appointed executor of Eva's estate, and so qualified. The Fidelity Savings Bank of Marshalltown was later named temporary administrator August 26, 1969, to represent the estate in the instant action, being substitute plaintiff.

Notice of probate of will, appointment of executor and notice to creditors regarding Eva's estate was published June 8, 1967 and June 15, 1967. More than one year has elapsed since the second publication.

Eva was survived by no spouse, her husband, William, having predeceased her, and she never remarried.

At time of William's death, Eva was 54 years of age, then having a life expectancy of 18.09 years.

Subsequent to William's death his widow Eva satisfied the outstanding mortgage indebtedness of $10,000 against the "improved" farm by 11 varying payments. She also paid interest due each year on that mortgage secured obligation.

The will executed September 8, 1921, by William G. and Eva D. Randall, (Exhibit A), provides, in material part:

"Item II. It is our will and we direct that, *upon the happening of the death of either of us, all property, both real and personal, of which we may be possessed at the time of such death shall be disposed of as follows:* (Emphasis supplied).

"The surviving husband or wife, as the case may be, shall be entitled to have, receive and use the rents, income and profit thereof during the remainder of the natural lifetime of said survivor, it not being the intention of either testator herein to give or confer a greater interest to the survivor in said property than a life estate with all the privileges and emoluments which pertain to life estates, such *survivor to be chargeable with the payment of interest if any encumbrances remain thereon,* and to be chargeable with the payment of annual taxes and any special assessments which may be levied against said property, *and each party hereto does hereby expressly waive right of dower and right of home-*

stead in the property of the other, and consents to be bound by the mutual obligations of this joint will, and consents to take under its terms and provisions in lieu of dower and homestead rights." (Emphasis supplied).

Item IV. In essence, this paragraph bequeaths $1000 to Edna Protzman, foster daughter, and the same sum to James Protzman, foster son, but specifies, "Such bequests, however, shall not mature and become payable until the decease of both joint makers of this will * * *." (Emphasis supplied).

Item V. This paragraph provides, in substance, subject to an exception if Eva survived William, "at the time of the decease of the last survivor of this joint will", life insurance proceeds, if any, be paid by the insurer in satisfaction of any mortgage indebtedness. (Emphasis supplied).

Item VI. Essentially this paragraph states, subject to prior provisions, the son, Clarence L. Randall, shall have a life estate in the "unimproved" farm.

Item VII. In effect, this paragraph, also subject to prior provisions, gives Alma L. McKibben, daughter, a life estate in the "improved" farm.

Item VIII. Provision is hereby made for appointment of an executor of the estate "after the decease of both makers of this joint will * * *." (Emphasis supplied).

December 5, 1921, William G. and Eva D. Randall executed a codicil (Exhibit B) thereby first declaring it to be an "addition and amendment to the joint Last Will and Testament" made and executed by them on the 8th day of September, 1921. (Emphasis supplied). This instrument also provided, upon the death of Clarence L. Randall and Alma L. McKibben, son and daughter of William and Eva, the property in which their aforesaid children had been granted a life estate by the joint will (Ex-

hibit A) vest absolutely in their respective heirs at law.

The will executed August 12, 1961, by Eva Randall (Exhibit 1) is in material part as follows:

"ITEM II

"I direct my executor hereinafter named to divide the balance of my estate into four equal parts, and I hereby give, devise and bequeath one of said parts to my daughter Alma McKibben, one of said parts to my grandson Clarence L. Randall Jr., one of said parts to my grandaughter Darlene Eckhart, and one of said parts to my foster son James A. Randall, to be their absolute property."

Item III disqualifies any beneficiary contesting the will.

Item IV designates executor of estate.

A February 11, 1965 codicil to the foregoing 1961 will of Eva Randall (Exhibit 2) essentially declares:

"ITEM I

"At Item I of my will made and executed on the 12th day of August, A.D., 1961, I have directed that the expenses of my last illness and burial and the costs of administration of my estate should be first paid. Immediately following said Item I and before Item II, I wish to insert this bequest and devise, to-wit: I hearby give, devise and bequeath to my daughter-in-law, Mabel Randall, in the event she survives me, the sum of Two Thousand Dollars. In the event Mabel Randall does not survive me, the gift, devise and bequest to her shall lapse.

"This Item above shall be prior to Item II of my said will made and executed August 12, 1961 and after Item I thereof. In all other respects, I confirm and ratify my said will of August 12, 1961."

Defendants Alma McKibben, her heirs at law, and Edna Protzman contend the 1921

joint will and codicil (Exhibits A and B) constitute a mutual testamentary instrument and should control. Trial court disagreed and held Eva Randall's 1961 will and codicil (Exhibits 1 and 2) govern disposition of the property here involved. As aforesaid, defendants Alma McKibben and her heirs at law here take issue with that adjudication.

Trial court further held the estate of Eva Randall was entitled to $5000 reimbursement for multiple payments made by her in satisfaction of the existing "improved" farm mortgage, *with interest from date of judgment*. Defendants Clarence L. Randall, Jr. and Darlene Randall Eckhart, on appeal from this holding, contend interest should have been allowed from date of each mortgage payment made.

Other appellate issues raised will be later identified and considered.

■ I. This action for declaratory judgment was heard and determined by trial court as a proceeding in equity. Our review is accordingly de novo. In re Estate of Kraft, 186 N.W.2d 628, 630 (Iowa); Bjork v. Dairyland Insurance Company, 174 N.W.2d 379, 382 (Iowa).

II. Due to foreclosure of mortgage on the "unimproved" tracts the only real estate instantly involved is the "improved" farm, acquired and held by William G. and Eva D. Randall *as tenants in common*. See Code § 557.15; Foley v. Engstrom, 247 Iowa 774, 779, 74 N.W.2d 673.

III. We deal here not with reciprocal wills, since the instrument, Exhibit A, and codicil, Exhibit B, both *supra,* are facially and admittedly the joint will of William G. and Eva D. Randall. See Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 607–608, 106 N.W.2d 637, 639–640.

■ IV. It is also understood, a will and codicil thereto are to be construed as one instrument, executed on date of the codicil, unless testator's manifest intent is to the contrary. In re Estate of Stone-

brook, 258 Iowa 1062, 1067–1068, 141 N. W.2d 531, 534. The codicil, Exhibit B, *supra,* states it is "an addition and amendment" to the joint will, Exhibit A, set forth above. That alone discloses an intent that the foregoing 1921 will and codicil thereto were to stand as one inseparable instrument. Additionally, an examination of the codicil discloses it basically served to provide for ultimate vesting of fee title upon expiration of any life estates created by the joint will, revoking no provision therein set forth.

■ V. In the same vein we have consistently held, in construing a will each part should be considered in relation to all others, and every provision given effect unless clearly in conflict with some positive rule of law, e. g., In re Estate of Logan, 253 Iowa 1211, 1217, 115 N.W.2d 701.

■ VI. And as this court has repeatedly held, a will speaks from date of testator's death, the rights of any party thereunder accruing at that time. Floerchinger v. Williams, 260 Iowa 53, 59, 148 N.W.2d 410, 413. This means, in event the 1921 joint will, *supra,* was also mutual, all rights thereunder vested upon the death of William G. Randall. Until then either Eva or William could have changed that will by giving notice thereof to the other but this they did not do. Sawyer v. Sawyer, 261 Iowa 112, 119–120, 152 N.W.2d 605, 609–610. See also Awtry's Estate v. Commissioner of Internal Revenue, 221 F.2d 749, 756–757 (8 Cir.).

VII. On the other hand we dealt with the matter of mutual wills in Gillette v. Cable, 248 Iowa 7, 11, 79 N.W.2d 195, 198, and there made this pertinent statement:

" * * * no binding contract exists so long as both parties live. Either may revoke. 'But *if there be no revocation before the death of one of the parties, the right of the survivor is thereby fixed * * * according to the terms of the mutual will.'* Anderson v. Anderson, 181 Iowa 578, 584, 164 N.W. 1042, 1044.

*'And where, as in the instant case, provision is made for third parties, the rights of such third parties are equally thereby fixed.'* Child v. Smith, 225 Iowa 1205, 1214, 282 N.W. 316, 321. Few propositions are better established in our opinion." (Emphasis supplied).

See also In re Estate of Fairley, 159 N.W. 2d 286, 288 (Iowa); Sawyer v. Sawyer, *supra;* In re Estate of Ramthun, 249 Iowa 790, 797–798, 89 N.W.2d 337, 341; Baker v. Syfritt, 147 Iowa 49, 56–57, 125 N.W. 998, 1001; Annos. 169 A.L.R. 9, 47.

As heretofore revealed, neither party to the 1921 joint will revoked same prior to the death of William G. Randall.

VIII. In light of the fact William G. Randall died April 13, 1930, The Code 1970, Section 633.270, is not instantly applicable. See Sawyer v. Sawyer, *supra,* and citations.

IX. The basic question now to be resolved is whether the 1921 joint will and codicil thereto constitute a mutual or contractual instrument.

In this jurisdiction a joint will is mutual when executed pursuant to a compact or agreement between two or more persons to dispose of their property, either to each other or to third persons, in a particular mode or manner, each in consideration of the other. Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 608, 106 N.W.2d 637, 639–640.

A greater quantum of proof than the mere execution of a joint will is, however, essential to the creation of a mutual testamentary instrument. That proof may be by extrinsic evidence or it may appear on the face of the will, or both. In re Estate of Logan, 253 Iowa 1211, 1216, 115 N.W. 2d 701, 704.

Here we have such proof facially established by the 1921 will.

Prefatorily, as disclosed by the record, William G. and Eva D. Randall were married in 1894. Subsequently the "unimproved" tracts were acquired, one of those parcels being owned by William, the other by him and Eva as tenants in common. In 1916 they purchased as tenants in common, the "improved" farm. It is thus apparent, when the subject joint will and codicil were executed Eva held an undivided half interest in one of the 80 acre "unimproved" tracts, and an undivided half interest in the entire "improved" farm. See Code § 557.15; Foley v. Engstrom, 247 Iowa 774, 779–780, 74 N.W.2d 673, 676; Dethlefs v. Carrier, 245 Iowa 786, 789, 64 N.W.2d 272, 274.

What then does the 1921 will say with regard to the property so owned by each testator? Item II of the joint will first says: "It is our will and we direct that, *upon the happening of the death of either of us, all property,* both real and personal, *of which we may be possessed at the time of such death shall be disposed of as follows:"* (Emphasis supplied). And that which follows served to grant each testator a life estate in all property owned by the other. Then appears this meaningful statement " * * * *and each party hereto* does hereby expressly waive right of dower and right of homestead in the property of the other, and *consents to be bound by the mutual obligations of this joint will,* * * *."* (Emphasis supplied).

Subsequent items specifically provide they shall become effective "at time of decease of the last survivor" or "after the decease of both makers of this joint will."

Confronted with a will containing comparable provisions in the case of In re Estate of Logan, 253 Iowa 1211, 1212–1216, 115 N.W.2d 701, this court, though reversing on other grounds, held the testamentary instrument there involved was joint and mutual. Under existing circumstances that holding is instantly applicable, fair and equitable. See also Tiemann v. Kampmeier, 252 Iowa 587, 588–591, 107 N.W.2d 689, 690–691; United States v. Ford, 377 F.2d 93, 96–97 (8 Cir.); United States v.

1,453.49 Acres of Land, Etc., 245 F.Supp. 582, 584–585 (S.D.Ia., Cen.Div.).

Significantly we said in Baker v. Syfritt, 147 Iowa 49, 56, 125 N.W. 998, 1001:

"Now it is evident that where two persons unite in a joint will, whereby the survivor takes some benefit from the estate of the one first deceased, and · such provision is coupled with another by which, subject to such right in the survivor, the estate of both is devised to a third person, there is an element of contract and mutual obligation between the makers, and when that devise becomes irrevocable, if it ever does, then there arises a vested right in the beneficiary of which he cannot be arbitrarily deprived."

But see In re Estate of Lenders, 247 Iowa 1205, 1214–1215, 78 N.W.2d 536, 542.

Here there was obviously a bilateral contract supported by both a manifestation of (1) mutual assent, and (2) adequate, not technical consideration. See Luthy v. Seaburn, 242 Iowa 184, 190–191, 46 N.W.2d 44, 47–48; In re Estate of Johnson, 233 Iowa 782, 789, 10 N.W.2d 664, 667; Child v. Smith, 225 Iowa 1205, 1217, 282 N.W. 316, 323; 1 Corbin on Contracts, § 132, at 565, n. 16; 1A Corbin on Contracts, § 152; Restatement, Contracts, §§ 19, 20, 81; Williston, Treatise on Law of Contracts, §§ 56, 57, 115 (rev. ed.); 17 C.J.S. Contracts §§ 100(1), 103; 17 Am.Jur.2d, Contracts, §§ 104, 109; 44 Iowa L.Rev. 534; cf. Awtry's Estate v. Commissioner of Internal Revenue, 221 F.2d 749, 756–757 (8 Cir.); Meurer Steel Barrel Co. v. Martin, 1 F.2d 687, 688 (3 Cir.).

No useful purpose will be served by discussing at length other readily distinguishable cases. E. g., In re Estate of Croulek, 252 Iowa 700, 107 N.W.2d 77 (reciprocal wills, each testator specifically reserving the right to alter, modify or reject at any time); Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 106 N.W.2d 637 (joint and reciprocal will absent facial pro-vision or extrinsic evidence disclosing any attendant contractual element); In re Estate of Johnson, 233 Iowa 782, 10 N.W.2d 664 (joint and reciprocal will, absent contractual element and lacking consideration because the husband owned substantial property, the wife none).

If there was in fact no underlying contractual agreement between William G. and Eva D. Randall at the time they executed the 1921 joint will they would hardly have consented to be bound by the mutual obligations thereof.

Trial court erred in holding the 1961 will and 1965 codicil executed by Eva Randall governed the disposition of all her property, both real and personal.

■ X. It is argued, however, the 1921 joint will was devoid of consideration because the makers thereby gave each to the other nothing more than a terminable life estate in the property respectively owned by them. There is no need to belabor this issue. As aforesaid the joint will, Exhibit A, and codicil thereto, Exhibit B, constitute one instrument. And by that codicil, fee title vested in agreed third party beneficiaries upon expiration of specified life estates.

It therefore follows the instant argument is without merit.

XI. Neither does Code § 597.2 serve to invalidate the contract arising out of the joint and mutual will executed by William G. and Eva D. Randall. See Luthy v. Seaburn, *supra,* at 242 Iowa 189–190, 46 N.W. 2d 47.

XII. Further, with regard to joint and mutual wills, this editorial comment in 169 A.L.R. 9, at 48, is here apropos:

"A will jointly executed by two testators or one of two separate wills, containing reciprocal provisions and provisions for the benefit of third persons effective upon the death of the surviving testator, which is a fruition of a contract between the testators, cannot be revoked

to the detriment of the third persons by the survivor after the death of the other testator and the acceptance of benefits derived from the will of the other which conformed to the contract, without committing a breach of contract, at least not from the viewpoint of a court of equity. The surviving testator, having accepted the benefits of a will jointly executed by him and another and containing reciprocal provisions, cannot repudiate the contract by which the will was made so as to affect the disposition made by the will for the benefit of third persons upon the death of the surviving testator."

See also Tiemann v. Kampmeier, 252 Iowa 587, 591, 107 N.W.2d 689, 692.

■ From this we conclude, after William G. Randall's death the "improved" farm was, in effect, held in trust by Eva D. Randall, subject to the specified life estates, for the beneficiaries designated in Item VII of the 1921 joint and mutual will, and Item II of the codicil thereto. See Herbst v. Treinen, 249 Iowa 695, 701, 88 N.W.2d 820, 824; 51 Am.Jur.2d, Life Tenants and Remaindermen, § 28; 31 C.J.S. Estates § 34.

Trial court erred in holding otherwise.

■ XIII. Closely related to the foregoing is defendant-cross-appellants' argument to the effect the joint testators' testamentary plan was destroyed by foreclosure of the "unimproved" farm mortgage. This position is supported by no citations on point, being foundationed only upon unspecified principles of equity. This is understandable. But see Alpen v. Chapman, 179 N.W.2d 585, 593 (Iowa); State v. Fiedler, 260 Iowa 1198, 1201–1203, 152 N.W.2d 236, 239.

We find no authority lending comfort to defendant-cross-appellants on this issue. In fact it would appear their complaint is misdirected and instantly ineffective. See generally Koch v. Kiron Bank, 230 Iowa 206, 297 N.W. 450; Fleming v. Brunner, 224 Md. 97, 166 A.2d 901, 905–906, citing

*inter alia,* 1 Tiffany, Real Property, (3d ed.), § 68; Simes and Smith, Law of Future Interests, § 1700 (2d ed.); Restatement, Property, § 149; 31 C.J.S. Estates § 35. See also 4A Thompson on Real Property, 1961 Replacement Volume, § 1901; 51 Am.Jur.2d, Life Tenants and Remaindermen, § 280.

XIV. The record also discloses trial court found, pursuant to Eva Randall's 1961 will and codicil thereto, fee title in the "improved" farm vested as follows:

"1. The heirs at law of Alma L. McKibben, an undivided one-half interest, subject to a life estate in favor of Alma L. McKibben in said undivided one-half interest.

"2. Alma McKibben, an undivided one-eighth interest.

"3. Clarence L. Randall, Jr., an undivided one-eighth interest.

"4. Darlene Eckhart, an undivided one-eighth interest.

"5. James A. Randall, an undivided one-eighth interest."

For reasons stated above we must disagree with that finding.

Trial court also found the foregoing "owners in fee simple" had additionally acquired such title by adverse possession and every adverse claimant was estopped from asserting any right contrary thereto. We again disagree.

■ The general principle is well established, possession of land by a life tenant, even though he then effects improvements on the res, is in its very nature not per se adverse to any remainderman or reversioner. See Beechley v. Beechley, 134 Iowa 75, 81, 108 N.W. 762, 765; Simes, Treatise on Law of Future Interests, § 50 (2d ed.); 3 Am.Jur.2d, Adverse Possession, § 225; 51 Am.Jur.2d, Life Tenants and Remaindermen, §§ 18, 24; 2 C.J.S. Adverse Possession § 70b; 31 C.J.S. Estates § 66; Annos. 58 A.L.R.2d 299, 302.

Here the surviving widow, Eva, acquired a life estate in the "improved" farm which she accordingly occupied until her death in 1967, and this action was commenced October 4, 1968. Under these circumstances neither adverse possession nor estoppel comes into play.

XV. Another issue raised by executor and cross-petitioners is, defendant-appellants' rights stand barred by the limitation provisions of The Code 1966, Section 633.410.

Although alleged in the pleadings, trial court did not pass on this problem, deeming it moot. It has, however, been urged on appeal in support of trial court's decree and is accordingly entertained. See Roth v. Headlee, 238 Iowa 1340, 1349, 29 N.W. 2d 923, 926.

Confronted with just such a question as that at hand in Herbst v. Treinen, 249 Iowa 695, 88 N.W.2d 820, this court aptly stated at 249 Iowa 701–702, 88 N.W.2d 824:

"We will assume this action was not commenced during the six month period although this does not appear from the petition nor otherwise in the record. See in this connection In re Estate of Camp, *supra,* 188 Iowa 734, 740–741, 176 N.W. 795, and citations. Defendants argue the action is a plain attempt to circumvent 635.68 (The Code 1954). [The Code 1966, Section 633.410].

"We have held that while the existence of another remedy does not preclude declaratory relief (rule 261, quoted in Division I, expressly so states), the relief must be denied where there is another complete remedy *intended to be exclusive.* Rich Mfg. Co. v. Petty, 241 Iowa 840, 849, 42 N.W.2d 80, 84. See also Travelers Insurance Co. v. Sneddon, 249 Iowa [393, 401], 86 N.W.2d 870, 875, and citations.

"We are clear the rule of the cases last cited is not applicable here. *Plaintiffs' action is not a claim* against Barbara's estate *in the sense used in 635.68 and other statutes pertaining to filing claims against estates.* As pointed out in Division III plaintiffs had no cause of action against Barbara in her lifetime. They merely seek to recover property they assert belongs to ·them that is held by defendants without right. Quite in point are Carlson v. Bankers Trust Co., 242 Iowa 1207, 1218, 50 N.W.2d 1, 8, and citations, especially In re Estate of Conner, 240 Iowa 479, 487, 36 N.W.2d 833, 838. See also Savery v. Sypher, 39 Iowa 675, 679–680. (Emphasis supplied).

"The annotation in 34 A.L.R. 362, 363, 371, 383, 389, points out that *ordinarily statutes requiring the filing of claims against estates do not apply to claims* not within the clear intent of the statute, or *arising after decedent's death, or to recover specific property or trust funds or property.*" (Emphasis supplied).

See also Packer v. Overton, 200 Iowa 620, 624–625, 203 N.W. 307, 310; Atkinson, Treatise on Law of Wills, § 127, at 696–698 (2d ed.); 44 Iowa L.Rev. 523, 538–540.

We are satisfied the statement in *Treinen, supra,* is instantly applicable and accordingly hold, defendant-appellants' rights are not barred by Code § 633.410 or any similar statutes.

XVI. This brings us to the remaining issue raised by cross-petitioners on this appeal.

As previously disclosed Eva, in course of her life tenant occupancy of the "improved" farm, satisfied the outstanding $10,000 mortgage indebtedness thereon by periodic payments, and interest due.

Trial court's holding to the effect Eva's estate was resultantly entitled to $5000 contribution from the remaindermen is not controverted. Cf. 1 American Law of Property, § 2.22; 5 Powell on Real Prop-

erty, § 668; 4A Thompson on Real Property, 1961 Replacement Volume, § 1901; Simes, Treatise on Law of Future Interests, § 48 (2d ed.); 51 Am.Jur.2d, Life Tenants and Remaindermen, § 275.

■ With regard to interest paid by Eva on the aforesaid obligation, the joint and mutual 1921 will so requires and for that there can be no reimbursement. See In re Estate of Myers, 234 Iowa 502, 514, 12 N.W.2d 211, 217; Bartels v. Seefus, 132 Neb. 841, 273 N.W. 485, 488; 1 American Law of Property, § 2.20; 51 Am.Jur.2d, Life Tenants and Remaindermen, §§ 277–278.

■ The position here taken is, trial court correctly found Eva Randall's estate was entitled to interest on the mortgage satisfaction payments made, but erroneously held such interest was owing only from date of the adjudication. We are so persuaded. See Goodnow v. Litchfield, 63 Iowa 275, 282–283, 19 N.W. 226, 230; 1 American Law of Property, § 2.25; 4A Thompson on Real Property, 1961 Replacement Volume, § 1901; 45 Am.Jur.2d, Interest and Usury, § 34; 47 C.J.S. Interest § 49.

Eva Randall's estate is entitled to interest from date of each payment made in amortization of the aforesaid mortgage principal. Trial court erred in holding to the contrary.

■ XVII. This action was neither improper nor unnecessarily commenced and pursued. Costs attendant upon this appeal are therefore taxed to the estate of Eva Randall to be assessed as part of the expenses of administration thereof. See In re Estate of Miguet, 185 N.W.2d 508, 519 (Iowa).

Reversed on both appeals and remanded for further proceedings consistent with this opinion.

All Justices concur.