Melvin A. DUHME, Thelma A. Blatt, Arlene A. Tegmier, and Helen A. Spratt, Appellees,

v.

Kenneth A. DUHME, as Executor of the Estate of Fred Duhme, Deceased, Elmer A. Duhme, Kenneth A. Duhme, Albert A. Duhme, Chester A. Duhme, Harold A. Duhme, and Raymond A. Duhme, Appellants.

No. 59366.

Supreme Court of Iowa.

Dec. 21, 1977.

Dennis E. Roberson, Maquoketa, for appellant, Kenneth Duhme.

Goodenow & Wright, Maquoketa, for appellant, Raymond A. Duhme.

Kintzinger, Kintzinger, Van Etten, Setter & King, Dubuque, for appellants, Elmer A. Duhme and Chester A. Duhme.

Sokol & Sokol, Maquoketa, for appellant, Albert Duhme.

Remley & Heiserman, Anamosa, for appellees.

Submitted to MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

This is an appeal by defendants, Raymond A. and Albert A. Duhme, from the trial court's decree granting relief in the nature of specific performance of the contractual provisions of the mutual wills of Fred and Mary Duhme, their father and mother. Mary Duhme died July 4, 1965; Fred died February 22, 1975.

There is no dispute Fred and his wife Mary Duhme executed mutual wills March 25, 1960. However, Fred Duhme made a first codicil to his last will and testament November 24, 1964, a second codicil October 25, 1965, and a third on June 26, 1972. Following their respective deaths their wills and the three codicils to Fred's will were admitted to probate in the Jackson District Court.

Plaintiffs who are a son and the daughters of decedents, Fred and Mary Duhme, had commenced an equitable action against Kenneth Duhme, executor of Fred's will, and the other Duhme children. Plaintiffs as a basis for relief alleged that prior to their respective deaths Mary A. and Fred Duhme made and entered into a contract for the disposition of their estates and that the wills of Mary A. and Fred Duhme were each made pursuant to said contract; that Fred Duhme violated this contract by placing a substantial portion of his property and estate in bank deposits in certain Iowa banks which were represented by Time Certificates of Deposit in the name of Fred

Duhme and some of his children as joint tenants or in such way the surviving children would ostensibly become owners of said accounts. These transfers were made before and after Mary's death.

Plaintiffs further alleged that the purported three codicils to the last will and testament of Fred Duhme attempted to change or alter the rights of plaintiffs in and to said estate. Plaintiffs sought a decree directing the executor to make distribution of the assets of Fred Duhme's estate in accordance with his last will and testament without regard to the codicils; that the funds represented by the bank deposits and Time Certificates of Deposit be declared to be the property of the estate of Fred Duhme.

The trial court found the wills were not revocable except by consent of both testators and no such consent was shown. Based on this finding the court declared invalid all the codicils Fred had executed and found the transfers of the assets also invalid.

By agreement of counsel but subject to the right of opposing counsel to make objections to the contents plaintiffs read into evidence a statement of A. L. Keck who had been the decedents' attorney during the time material to this lawsuit. At the time of trial Mr. Keck was a district judge of the Seventh Judicial District of Iowa. We set out the statement in its entirety:

"Pursuant to our recent conference I am furnishing each of you the following narrative: I was well and personally acquainted with Fred and Mary Duhme during their lifetimes. They were clients during the latter part of my private law practice which terminated in July 1971. I consulted with them concerning the ordinary problems of farming, tax and real estate matters. I assisted Fred Duhme as Executor of the Estate of Mary Duhme who died in July 1965. Both of these parties were known to me as substantial citizens of good character and repute. Fred was of the rugged individual type. He had farmed hard and well all of his life and had prospered. He was strong willed and determined in his convictions and concepts of right and wrong.

Mary was a genteel lady in every sense. She was pleasant to deal with and went along with Fred in most things. However, she had a mind of her own and it was not about to acquiesce in any proposition that violated her principles or personal views. I prepared a Will for each of these parties and the same were executed March 25, 1960 after preliminary conferences at which they both were present. Fred had given considerable thought to the distribution of his estate and had discussed same with Mary and they both discussed the matter with me. They were not interested in trusts or any other plan that might involve a bank or non-family administration. They reached mutual agreement as to the disposition of their estates which is reflected in the Wills signed March 25, 1960. Mary's agreement was somewhat reluctant. It is my recollection that she felt Fred was being more generous to the sons than to the daughters. She also felt that her son Harold Butka, also known as Harold Duhme, who had been raised in the home, should be treated as one of the children or provided for to some extent. However, Mary decided to go along with Fred and the two Wills were duly executed and witnessed. Both agreed prior to and at the time of execution that these instruments were final testamentary dispositions, that the same would not be altered or changed unless they jointly agreed during their lifetimes that no lifetime gifts or transactions would thwart this intent and that the Will of the survivor would be irrevocable. Language to this effect is included in each Will. Fred's First Codicil of November 24, 1964 was executed at a time when he was well aware of the provisions of the Will as described above and the effect thereof was explained by me. These matters were also discussed with Mary and with both of them together. She declined to go along with Fred by way of agreeing to his First Codicil or in executing a confirming Codicil to her own Will. Both of these instruments had been prepared at Fred's instance and request. He decided to sign the First Codicil without Mary's agreement and consent and did so. His thought was that Mary would come around to his

way of thinking and agree with him—or that if not, the children would respect his wishes. At no time were there any family arguments or unpleasantness involved. Mary, in substance, felt that the First Codicil was less fair to the daughters than the original Will and she declined to participate therein. I conferred with them both present together at least once on this matter—probably more than once—but I am not sure as to this. I do not remember if Mary was present when Fred signed the First Codicil. If she was not, I do not know if she ever was advised that it had been signed. Fred's Second Codicil of October 25, 1965 was executed by him after Mary's death and after further discussions with me as to the restrictions of the original Will. His reasoning was much the same at this time in that he felt the children would honor his wishes and he directed the preparation of the Second Codicil with language to this effect. At no time was there any question in my mind as to mental competency or constraint of either testator. Gentlemen: this is an effort, at your request, to furnish you my information on an equal basis. Hopefully, you can agree to submit this narrative to the trial court or stipulate as to my testimony in some other form. Otherwise, you may want my deposition, which I trust will be a last resort."

It is undisputed the mutual wills purport to be irrevocable while both Fred and Mary lived and after the death of either of them. The language of Fred's will is basically the same as that in Mary's. It reads in pertinent part as follows:

" * * *

"ELEVENTH: * * * These Wills have been made pursuant to a contract between us to dispose of our Estates as provided in these Wills. This contract provides that neither of us shall revoke or amend his or her Will by Codicil or otherwise, nor make any inter vivos disposition of property or contract which will defeat or avoid the agreement to dispose of our property as provided in these Wills. * * *

" * * *

"FOURTEENTH: By reason of the contractual agreements contained in this Will and that of my wife, both of which are executed this date, we are depositing said Wills in escrow * * * upon the condition that said Wills, or either of them shall not be withdrawn from escrow during our lifetimes except upon our joint application. * * *."

Neither party disputes the admission into probate of the three codicils executed by Fred. Plaintiffs seek specific performance of the contractual provisions of the wills or in the alternative damages for breach of the contract expressly recognized in the wills.

The issue presented is whether a party to a mutual will may unilaterally revoke his will with notice during the lifetime of both parties where the mutual wills were made in compliance with an express contract prohibiting any other disposition of his property other than that agreed to in the wills.

I. This is an action in equity; therefore our review is de novo. We examine the whole record and adjudicate rights anew on those propositions properly presented, provided the issue has been raised and error, if any, preserved in the course of trial proceedings. While we will give weight to the findings of trial court this court will not abdicate its function as triers de novo on appeal. *In re Marriage of Williams*, 199 N.W.2d 339, 346 (Iowa 1972).

II. Defendants contend Fred could unilaterally revoke the mutual wills as long as he gave notice of his intention to do so to Mary. Plaintiffs deny there was actual notice and assert a mutual will which by express contract is irrevocable and which forbids inter vivos transfers cannot be revoked at any time without mutual consent of the parties thereto. We consider the revocability issue first.

In Iowa it is clearly established a will, mutual or otherwise, becomes effective only upon the date of the testator's death. This means the rights of parties under the will do not vest until the date of the death of the testator. *Estate of Randall v.*

*McKibben*, 191 N.W.2d 693, 698 (Iowa 1971). Here, Mary's contract with Fred as expressed in their wills did not become effective until the date of her death, July 4, 1965.

The parties here do not dispute that the first codicil would not have been effective if it had been executed after Mary's death. Plaintiffs cite *Matter of Estate of Chapman*, 239 N.W.2d 869 (Iowa 1976), in support of this proposition.

Plaintiffs, however, cite *Chapman* also in support of their position on irrevocability. The case provides no support for this position. In *Chapman* the survivor of the two persons to the mutual wills attempted to revoke his will after the death of the other person. This situation does not exist in the case here.

The present case is controlled by the previously cited *Randall* case. In *Randall* we discussed the meaning of our frequent holding a will becomes effective only upon the testator's death. We stated:

" * * * This means, in event the 1921 joint will, *supra*, was also mutual, all rights thereunder vested upon the death of William G. Randall. Until then either Eva or William could have changed that will by giving notice thereof to the other but this they did not do. * * * [citing authorities].

"On the other hand we dealt with the matter of mutual wills in *Gillette v. Cable*, 248 Iowa 7, 11, 79 N.W.2d 195, 198, and there made this pertinent statement:

" ' * * * no binding contract exists so long as both parties live. Either may revoke.' * * *." 191 N.W.2d at 698.

Plaintiffs maintain the *Randall* case and other similar cases do not apply to the situation here because such cases involve situations where the court was attempting to determine if there were an implied contract. Plaintiffs assert the present case is distinguishable because here there is an express contract. This argument is without merit.

■ A contract may be express or implied. When the parties manifest their agreement by words the contract is said to be express. When it is manifested by conduct it is said to be implied in fact. Both are true contracts formed by a mutual manifestation of assent by the parties to the same terms of the contract. The differentiation arises from the method of proving the existence thereof. *Ringland-Johnson-Crowley v. First Cent. Serv.*, 255 N.W.2d 149, 152 (Iowa 1977). This same point is made in 1 Williston on Contracts (Third Ed., Jaeger), section 3, pp. 8–9, in this fashion: " * * * Contracts are express when their terms are stated by the parties and are often said to be implied when their terms are not so stated. The distinction is not based on legal effect but on the way in which mutual assent is manifested."

■ In Iowa a will is mutual only if it is executed pursuant to an agreement as to the disposal of property of the makers in a certain way. *Chapman*, 239 N.W.2d at 971, and authorities cited. From our de novo review we conclude there is clear and satisfactory evidence found in the instruments themselves which establishes without dispute that it was the express intention of Fred and Mary A. Duhme that the wills executed by them March 25, 1960, be construed as mutual wills.

■ Nevertheless, even when the wills are executed in pursuance of an agreement between the parties to make a testamentary disposition of their property in a particular mode each in consideration of the other, either party may revoke during the lifetime of both provided notice be given the other party of such intention. See *Campbell v. Dunkelberger*, 172 Iowa 385, 389, 153 N.W. 56, 58; *Anderson v. Anderson*, 181 Iowa 578, 584, 164 N.W. 1042, 1044; *Child v. Smith*, 225 Iowa 1205, 1214, 282 N.W. 316, 322; *Luthy v. Seaburn*, 242 Iowa 184, 190–191, 46 N.W.2d 44, 48; *In re Estate of Ramthun*, 249 Iowa 790, 797, 89 N.W.2d 337, 341. See also Note, Recent Development of the Iowa Law of Joint and Mutual Wills, 44 Iowa L.Rev. 523.

■ Actual notice of the execution of the codicil revoking the mutual will is not re-

quired. All that is required is notice to the other party of the testator's intention to revoke the will during the lifetime of both. We have previously stated this principle as follows: " * * * [B]y the weight of authority either party may revoke during the lifetime of both, providing notice be given the other party of such *intention*." (Emphasis supplied). *In re Estate of Ramthun*, 249 Iowa at 797, 89 N.W.2d at 341.

It has been said that "it is doubtful if any contract theory can justify the rule that one testator may revoke during the lifetime of both testators upon notice to the other." 44 Iowa L.Rev. at 537.

▉ The reason for such a rule would seem more likely founded upon the theory that "the essential characteristic of a testamentary instrument is that it operates only upon and by reason of the maker's death. Until then it is ambulatory. By its execution the maker parts with no rights and divests himself of no part of his estate and no rights accrue to, or vest in, any other person. The maker's death establishes the character of the instrument. It then ceases to be ambulatory, acquires a fixed status and operates as a transfer of title. * * * [citing authorities]." *In re Estate of Lundgren*, 250 Iowa 1233, 1236–1237, 98 N.W.2d 839, 841–842.

▉ In order to prevail on the theory Fred had revoked his March 25, 1960, will during the lifetime of both, defendants had the burden to establish there was notice to Mary A. Duhme of Fred's intention. Our task is to determine from a de novo review whether defendants sustained this burden, which is a burden of persuasion.

▉ The only evidence disclosed by the record bearing on the issue of notice to Mary is contained in the statement of A. L. Keck set out earlier. Defendants challenged the relevancy and competency of various portions of this statement. We have considered this statement in light of the objections made by defendants.

Mary Duhme was present in Keck's office along with Fred when the first codicil to Fred's will was discussed. In that codicil Fred expressed an intent to make substantial changes in the fourth, fifth and seventh paragraphs of his original will. One change dealt with the disposition of a 178 acre tract of land owned by Fred. In the original will Fred's eight children were given an equal chance to bid on the purchase of this tract. In the codicil this provision was revoked and the 178 acre tract was devised to Raymond subject to a life estate in Mary. In the second change he added an entire paragraph favorable to another son. The third change involved the amounts of specific bequests made for the benefit of six of the Duhme children, three sons and three daughters. Most of the changes resulted in increased amounts for the sons and in all cases reduced amounts for the benefit of the daughters.

According to Keck's statement Mary declined to go along with Fred by way of agreeing to his first codicil or in executing a confirming codicil to her own will. Both instruments had been prepared by Keck at Fred's instance and request. Keck did not remember if Mary was present when Fred signed the first codicil and if she was not he did not know if she was ever advised that it had been signed. In any event, Fred executed the first codicil approximately seven months before Mary's death.

In our opinion under this record defendants sustained their burden of showing notice to Mary A. Duhme of Fred's intention to revoke his original will. Hence, his November 24, 1964, codicil effectively revoked his March 25, 1960, will.

From the time Fred executed the first codicil to his will until Mary's death the Duhmes lived in Maquoketa five or six blocks from Keck's office. There was a telephone in the home which Mary Duhme customarily used. There was evidence Mrs. Duhme socialized with neighbors and visited in the homes of her children. This activity continued until she went to the Iowa City hospital the first part of 1965. Keck had continued his law practice until appointed to the district court in July of 1971.

There is nothing in this evidence which would tend to alter the validity of this notice of Fred's intention to revoke his will.

Plaintiffs' contention Fred violated his contract with Mary by revoking his 1960 will for which his estate must respond in the manner and form directed by the trial court in this case is without merit. The trial court erred in so holding.

Since Fred's estate must still be administered the decree of the trial court is reversed and the case is remanded with instructions that the district court, sitting in probate, take all steps necessary to insure disposition of the assets in accordance with this opinion.—Reversed and remanded with directions.